**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 20 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ALFRED ANDRE DICKERSON,

Defendant-Appellant.

No. 98-6452

---

APPEAL FROM UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. CR-97-195-T)

---

J. David Ogle, of Martin Law Office, Oklahoma City, Oklahoma, for the appellant.

Kim Kakish, Assistant United States Attorney (Patrick M. Ryan, United States Attorney, with her on the brief), Oklahoma City, Oklahoma, for the appellee.

---

Before **ANDERSON, BRORBY,** and **BRISCOE**, Circuit Judges.

---

**BRISCOE**, Circuit Judge.

---

Defendant Alfred Andre Dickerson appeals his conviction and sentence for managing or controlling a building and making it available for use for the purpose

of illegal drug activity in violation of 21 U.S.C. § 856(a)(2). We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

I.

In the fall of 1994, Oklahoma City police began investigating Dickerson as a possible supplier of crack cocaine. On October 21, 1994, the police obtained a "knock and announce" search warrant for Dickerson's residence in Oklahoma City. At approximately 9:47 p.m., a group of eleven officers, all wearing some type of clothing identifying them as police, arrived at Dickerson's residence to execute the warrant. To the officers' surprise, they saw Dickerson coming out the front door of the house and three or four persons in a vehicle parked in the driveway. In order to secure all of these individuals, one officer approached the front porch of the house while two or three officers approached the vehicle. The officer who approached Dickerson on the front porch announced her identity and attempted to physically secure him. Dickerson kicked the officer off the porch and began running away from the house. Other officers yelled at Dickerson to "halt." Ultimately, he was corralled by officers in the street and, after a brief fight, was arrested. As for the occupants of the vehicle, officers secured them after loudly announcing they were police officers and yelling, "Keep your hands up." Record Vol. IV, at 18.

Lieutenant Robert Biby, the officer in charge of the search, concluded the

remaining occupants inside the house likely had heard the yelling and commotion through the partially open front door and had been alerted to the presence of police officers. Accordingly, he decided to dispense with the "knock and announce" requirement. Although he had no specific information indicating there were firearms inside the house, he was concerned the occupants might have firearms and use them against the officers. He also was concerned there would be an opportunity for the occupants to destroy any drugs inside the house. According to Biby, it was very easy to dispose of crack cocaine in the quantity alleged to have been distributed by Dickerson (i.e., $20 rock size).

In accordance with Biby's directions, four or five officers went into the house without knocking or waiting for a response from the remaining occupants. The officers loudly announced, "Police, search warrant," as they crossed the threshold of the house. Id. at 21. During the ensuing search of the house, officers discovered approximately 196 grams of crack cocaine, a large quantity of cash, and firearms.

Dickerson was indicted on various drug-related offenses. His motion to suppress evidence obtained during the search of his residence was denied and he entered into a conditional plea agreement with the government. In connection with that agreement, a superseding information was filed charging him with one count of knowingly and intentionally making available for use a residence for the

-3-

purpose of unlawfully distributing crack cocaine in violation of 21 U.S.C. § 856(a)(2). Dickerson pleaded guilty to that single charge and was subsequently sentenced to a term of imprisonment of 151 months.

II.

**Denial of motion to suppress**

Dickerson contends the district court erred in denying his motion to suppress evidence obtained during the search of his residence. According to Dickerson, the officers violated the terms of the "knock and announce" search warrant by entering his residence without first knocking or waiting for the remaining occupants to respond. Dickerson further argues there were no exigent circumstances that allowed the officers to ignore the "knock and announce" requirement of the warrant. He also argues the officers violated Oklahoma law because the warrant was executed after 10:00 p.m. [1]

In reviewing the denial of a motion to suppress, we view the evidence in the light most favorable to the government and accept the district court's factual findings unless clearly erroneous. United States v. Green, 178 F.3d 1099, 1104 (10th Cir. 1999). The ultimate determination of reasonableness under the Fourth

---

[1] Dickerson also contends the officers had no knowledge, at the time of their entry, that third parties were present in the house. Because, however, this factual argument was not asserted in the district court, we do not address it on appeal. United States v. Gilkey, 118 F.3d 702 (10th Cir. 1997) ("Factual disputes not raised below are waived.").

Amendment is a question of law we review de novo, considering the totality of the circumstances. Id.

The issue here is whether the failure on the part of the officers to knock and announce their presence before seeking entry to Dickerson's residence rendered the ensuing search and seizure of evidence constitutionally unreasonable. In Wilson v. Arkansas, 514 U.S. 927, 929 (1995), the Supreme Court held that "the common-law 'knock and announce' principle forms a part of the reasonableness inquiry under the Fourth Amendment." The Court was careful to point out, however, that "the common-law principle of announcement was never stated as an inflexible rule requiring announcement under all circumstances." Id. at 934. Indeed, when justified by exigent circumstances, such as those "presenting a threat of physical violence" or "where police officers have reason to believe that evidence would likely be destroyed if advance notice were given," the presumption in favor of announcement must yield. Id. at 936; see also Richards v. Wisconsin, 520 U.S. 385, 394 (1997) ("In order to justify a 'no-knock' entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence.").

The district court, in rejecting Dickerson's motion to suppress, concluded that exigent circumstances justified the "no-knock" entry into Dickerson's residence. In reaching this conclusion, the court made two important subsidiary factual findings. First, the court found that the remaining adult occupants of the house, two of whom were in the living room at the front of the house, were alerted to the presence of the police because of the activities that occurred immediately outside the house prior to entry (i.e., the arrest of Dickerson and the securing of the individuals in the vehicle). Second, the court found it was reasonable for Biby "to believe that the officers' safety was compromised and that evidence could be destroyed if further delay occurred." Record Vol. I, Doc. 74, at 6.

Having carefully examined the transcript of the suppression hearing, we conclude the district court's factual findings are well supported by the evidence. It was essentially uncontroverted that the officers who executed the warrant yelled loudly during their chase and arrest of Dickerson, loudly announced their presence to the occupants of the vehicle in the driveway, and wore clothing that clearly identified them as law enforcement officers. Further, it was uncontroverted that the front door of the residence was partially open during all of these events. Taken together, this evidence was clearly sufficient to support Biby's belief that any remaining occupants of the house were aware of the

officers' presence. Although Dickerson's mother, one of the two adults found by the officers in the living room of the house, testified she was not aware of the officers until they entered the house, her testimony was obviously rejected by the district court as lacking credibility. Even assuming arguendo that her testimony was truthful, the proper focus is on what Biby reasonably believed at the time he decided to dispense with the "knock and announce" requirement and not on whether the occupants of the house were actually aware of the presence of the officers. See Richards, 520 U.S. at 394 (stating that focus is on whether the police had "reasonable suspicion" that knocking and announcing would be dangerous or futile, or would inhibit effective investigation).

Based upon these facts, we conclude that exigent circumstances justified the no-knock entry into Dickerson's residence. See United States v. Dahlman, 13 F.3d 1391, 1398 (10th Cir. 1993) (holding that whether exigent circumstances justify a "no-knock" entry is a mixed question of law and fact subject to de novo review). In particular, given Biby's reasonable suspicion that any remaining occupants of the house were aware of the officers' presence, we conclude it was likewise reasonable for him to believe those occupants might attempt to immediately destroy any drugs in the house. The possibility of evidence being destroyed created exigent circumstances that allowed the police to enter the house

without first knocking and announcing. [2]

Dickerson's argument that the search occurred after 10:00 p.m. and thereby violated Oklahoma law is without merit. First, the district court found that the search occurred prior to 10:00 p.m., and this finding is not clearly erroneous given the evidence presented at the suppression hearing. See Record IV, at 20-21 (indicating police arrived at 9:47 p.m. and secured Dickerson and the other individuals outside the house in less than a minute). In any event, "[i]t is . . . well established in this circuit that 'in federal prosecutions the test of reasonableness in relation to the Fourth Amendment . . . must be determined by Federal law even though the police actions are those of state police officers.'" United States v. Le, 173 F.3d 1258, 1264 (10th Cir. 1999) (quoting United States v. Miller, 452 F.2d 731, 733 (10th Cir. 1971)). This is because "'the exclusionary rule is only concerned with deterring [federal] Constitutional violations.'" Id. (quoting United States v. Wright, 16 F.3d 1429, 1437 (6th Cir. 1994)). Thus, "the fact that the arrest, search, or seizure may have violated state law is irrelevant as long as the standards developed under the Federal Constitution were not offended." Id. (citation omitted).

---

[2] Having concluded that Biby's concerns about destruction of evidence justified the "no-knock" entry, we find it unnecessary to decide whether his concerns about officer safety also justified the entry.

**Application of U.S.S.G. § 2D1.1(b)(1)**

During the search of Dickerson's residence, officers found a loaded handgun under the cushion of a chair in the living room and a loaded rifle in one of the bedrooms. Based upon the presence of these firearms, the district court increased Dickerson's offense level by two points pursuant to U.S.S.G. § 2D1.1(b)(1). Dickerson challenges this enhancement, claiming the evidence presented by the government was insufficient to establish a connection between him and the firearms. We review the district court's interpretation of § 2D1.1(b)(1) de novo and the court's underlying factual findings for clear error. United States v. Vaziri, 164 F.3d 556, 568 (10th Cir. 1999).

Section 2D1.1(b)(1), which applies to the "unlawful manufacturing, importing, exporting, or trafficking" of drugs, directs a sentencing court to increase a defendant's base offense level by two levels "[i]f a dangerous weapon (including a firearm) was possessed." The commentary states that "[t]he enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons." U.S.S.G. § 2D1.1 comment. (n.3). The commentary additionally provides that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." Id. Consistent with the commentary, we have held that the government bears the initial burden of proving possession by a

preponderance of the evidence, and proof of possession may be established by showing mere proximity to the offense. See Vaziri, 164 F.3d at 568; United States v. Roberts, 980 F.2d 645, 647 (10th Cir. 1992). The enhancement is appropriate unless the defendant proves it is clearly improbable the weapon was connected with the offense. See Vaziri, 164 F.3d at 568.

Having reviewed the record on appeal, we conclude the government satisfied its burden of proving possession. In particular, it was uncontroverted that two loaded firearms were found in Dickerson's residence at the time of the search. Although neither firearm was located in the same room as the large quantity of crack cocaine seized by the officers, both firearms were located in relatively close proximity to that room. Moreover, the handgun was found alongside a crack pipe containing crack residue, and similar drug paraphernalia were scattered throughout the house. See United States v. Flores, 149 F.3d 1272, 1280 (10th Cir. 1998) (finding that the requisite nexus may be established by showing weapon was located near the general location where drugs or drug paraphernalia was stored or where part of transaction occurred), cert. denied, 119 S. Ct. 849 (1999). Finally, and perhaps most important, the firearms, drugs, and drug paraphernalia were all located inside the house which Dickerson, through his guilty plea, acknowledged he possessed and allowed others to use for drug trafficking activities. In other words, because Dickerson's guilty plea effectively

-10-

indicated his entire house was used for drug trafficking activities, the presence of the firearms inside the house was sufficient to establish possession for purposes of § 2D1.1(b)(1).

To the extent Dickerson is arguing the government failed to prove he personally had actual or constructive possession of the firearms, the argument is irrelevant. As applied here, the focus of § 2D1.1(b)(1) is whether Dickerson possessed a firearm in connection with the offense to which he pleaded guilty, that is, whether Dickerson violated 21 U.S.C. § 856(a)(2) by controlling a building and making it available for use for the purpose of illegal drug activity. By its very nature, the offense of conviction involved the participation of other persons. More specifically, in order to violate § 856(a)(2), Dickerson had to provide the house or building and other parties had to use the house to engage in drug trafficking activity. See United States v. Banks, 987 F.2d 463, 465-66 (7th Cir. 1993). For purposes of sentencing, then, Dickerson can be held accountable for any reasonably foreseeable activities engaged in by the parties using his house for drug trafficking activities, including the possession of firearms. See U.S.S.G. § 1B1.3(a)(1)(B) (in a case involving jointly undertaken criminal activity, relevant conduct includes "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity"); United States v. Smith, 131 F.3d 1392, 1400 (10th Cir. 1997) (sentencing court may attribute to

-11-

defendant firearms possessed by his codefendants if the possession was reasonably foreseeable to defendant), cert. denied , 118 S. Ct. 1109 (1998); Banks , 987 F.2d at 468 (citing cases holding that possession of a firearm in a drug transaction is reasonably foreseeable for purposes of § 1B1.3(a)(1)(B)).

Ultimately, because Dickerson failed to present any evidence demonstrating the firearms were not connected with the drug trafficking activities that occurred in his house, we conclude the district court properly applied the two-level sentence enhancement under § 2D1.1(b)(1).

**Applicability of U.S.S.G. § 2D1.8(a)(2)**

In his final argument, Dickerson contends the district court should have applied the provisions of U.S.S.G. § 2D1.8(a)(2) and capped his base offense level at 16 because he did not personally participate in the drug trafficking offenses that took place at his house. As previously noted, we review the district court's interpretation of the guidelines de novo and the court's subsidiary factual findings for clear error. See United States v. Davis , 182 F.3d 1201, 1202 (10th Cir. 1999).

Section 2D1.8(a) governs the calculation of the base offense level for a defendant charged with violating § 856(a)(2) and provides:

(a) Base Offense Level:

    (1)    The offense level from § 2D1.1 applicable to the underlying controlled substance offense, except as provided below.

    (2)    If the defendant had no participation in the underlying controlled substance offense other than allowing use of the premises, the offense level shall be 4 levels less than the offense level from § 2D1.1 applicable to the underlying controlled substance offense, but not greater than level 16.

The commentary to § 2D1.8 provides further insight on calculating a defendant's base offense level:

> Subsection (a)(2) does not apply unless the defendant had no participation in the underlying controlled substance offense other than allowing use of the premises. For example, subsection (a)(2) would not apply to a defendant who possessed a dangerous weapon in connection with the offense, a defendant who guarded the cache of controlled substances, a defendant who arranged for the use of the premises for the purpose of facilitating a drug transaction, a defendant who allowed the use of more than one premises, a defendant who made telephone calls to facilitate the underlying controlled substance offense, or a defendant who otherwise assisted in the commission of the underlying controlled substance offense. Furthermore, subsection (a)(2) does not apply unless the defendant initially leased, rented, purchased, or otherwise acquired a possessory interest in the premises for a legitimate purpose. Finally, subsection (a)(2) does not apply if the defendant had previously allowed any premises to be used as a drug establishment without regard to whether such prior misconduct resulted in a conviction.

U.S.S.G. § 2D1.8 comment. (n.1).

Of the few published cases discussing § 2D1.8, none indicate whether the defendant has the burden of proving the applicability of subsection (a)(2), or whether the government has the burden of proving the inapplicability of

subsection (a)(2).  In light of the overall structure of the guideline, in particular

the fact that subsection (a)(1) effectively presumes that a defendant personally

participated in the underlying controlled substance offense, we conclude the

burden falls on a criminal defendant to prove he did not personally participate in

order to obtain the benefits of subsection (a)(2).  See United States v. Kirk, 894

F.2d 1162, 1164 (10th Cir. 1990) ("The government shall bear the burden of proof

for sentence increases and the defendant shall bear the burden of proof for

sentence decreases."); see also United States v. Onheiber, 173 F.3d 1254, 1258

(10th Cir. 1999) (defendant has the burden of establishing, for purposes of

reduction in base offense level, that he was a minor participant in offense).

Reviewing the record on appeal, we conclude Dickerson failed to establish

he did not personally participate in the underlying controlled substance offense.

At the time of his arrest immediately prior to the search of his residence,

Dickerson was found to be in possession of approximately 17 grams of crack

cocaine (which he attempted to throw away when he briefly fled from the

officers).  During the subsequent search of the house, police found 196 grams of

crack cocaine, approximately $6000 in cash, a small amount of marijuana, and a

mobile phone in the northwest bedroom of the house.  Other evidence found in

the northwest bedroom, most notably a vehicle registration certificate found near

the crack cocaine, indicated the bedroom and its contents belonged to Dickerson.

-14-

Based upon this evidence, it was entirely proper for the district court to refuse to apply § 2D1.8(a)(2).

The judgment of the district court is AFFIRMED.