**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 4 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

EMILIO GUTIERREZ, JR., also
known as Emilio Gutierrez, II,

    Defendant-Appellant.

No. 99-3373

(D.C. No. 99-CR-20038-KHV)
(D.Kan.)

---

**ORDER AND JUDGMENT** [*]

---

Before **EBEL** and **BRISCOE,** Circuit Judges, and **COOK**, District Judge. [**]

---

Defendant Emilio Gutierrez appeals the district court's decision to enhance his sentence pursuant to United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") § 2D1.1(b)(1). We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] The Honorable H. Dale Cook, Senior District Judge, Northern District of Oklahoma, sitting by designation.

# I

This case comes to us as a result of a plea bargain. In February 1999, officers from the Shawnee, Kansas, Police Department arrived at Gutierrez's residence and conducted a consensual search of his bedroom. Gutierrez shared this residence with his parents. During the search, officers discovered 419 grams of "a mixture or substance containing cocaine hydrochloride," $19,833.00 in cash, ten firearms, a silencer, and "assorted ammunition." Record on Appeal, Vol. IV, at 3-4 (¶ 6). Gutierrez ultimately pleaded guilty to one count of possessing a controlled substance in violation of 21 U.S.C. § 841(a)(1). In exchange for Gutierrez's plea, the government agreed not to oppose a three-level sentencing reduction for acceptance of responsibility. The government also conditionally agreed to file a motion for a downward departure under U.S.S.G. § 5K1.1.

After Gutierrez entered his plea, the district court conducted a sentencing hearing. To support his objection to a sentence enhancement for the possession of a dangerous weapon, Gutierrez elicited testimony from his mother, Aurora Gutierrez. Mrs. Gutierrez testified that her son collected guns and kept the guns in his room behind a locked door. To Mrs. Gutierrez's knowledge, the guns in her son's room were unloaded. Mrs. Gutierrez also explained that her husband had "always collected guns" and kept them in a locked cabinet. Record on Appeal, Vol. III, at 7. According to Mrs. Gutierrez, her husband and her son read

2

magazines about firearms and engaged in "target practice." <u>Id.</u> at 9.[1]

Unpersuaded by this testimony, the district court overruled Gutierrez's objection

and increased his sentence by two levels pursuant to U.S.S.G. § 2D1.1(b)(1).

This enhancement raised Gutierrez's offense level to 23, increasing his Guideline

range from 37-46 months to 46-57 months. The court then sentenced Gutierrez to

a prison term of 46 months, noting that it would have imposed the same sentence

even if Gutierrez's objection had been sustained. [2]

## II

We first address whether we have jurisdiction over this appeal. In an order

to show cause issued in December 1999, we ordered the parties to address (1)

whether Gutierrez filed his notice of appeal in a timely manner; and (2) whether

Gutierrez's appeal concerns a discretionary refusal to grant a downward

departure. As to the first issue, Federal Rule of Appellate Procedure 4(b)(1)

---

[1] Mrs. Gutierrez acknowledged that she was unaware her son had cocaine in his room. She further acknowledged that she did not know whether her son sold the drugs from the residence, or whether he carried any firearms during the sales.

[2] Although the district court's remark that it would have imposed the same sentence under either scenario could conceivably support a finding of harmless error, we decline to address this issue. First, the government makes no argument in its appellate brief that the district court's decision should be affirmed on "harmlessness" grounds. Second, as discussed below, the district court's decision to enhance Gutierrez's sentence was not clearly erroneous. Because we affirm the district court on that basis, we need not consider "harmlessness" as an alternative rationale.

requires a criminal defendant to file a notice of appeal within ten days "of either the judgment or the order being appealed." Gutierrez did not file his notice of appeal within this ten-day window. However, in compliance with Federal Rule of Appellate Procedure 4(b)(4), Gutierrez obtained a 17-day extension of time from the district court. This extension rendered Gutierrez's notice of appeal timely. As to the second issue, we normally "lack jurisdiction to review a sentencing court's discretionary denial of a downward departure." United States v. Guidry, 199 F.3d 1150, 1161 (10th Cir. 1999). The instant case involves an allegedly improper sentence enhancement, not a discretionary refusal to depart downward. Accordingly, we have jurisdiction to consider the merits of the dispute.

Section 2D1.1(b)(1) of the Guidelines directs a district court to enhance a defendant's sentence by two levels if it determines that "a dangerous weapon (including a firearm) was possessed" during the predicate drug trafficking crime. This enhancement "is designed to reflect the increased danger of violence when drug traffickers add firearms to the mix." United States v. Flores, 149 F.3d 1272, 1280 (10th Cir. 1998), cert. denied, 525 U.S. 1092 (1999); accord United States v. Dickerson, 195 F.3d 1183, 1188 (10th Cir. 1999). The initial burden is on the government "to prove possession of the weapon by a preponderance of the evidence." United States v. Humphrey, 208 F.3d 1190, 1210 (10th Cir. 2000); accord United States v. Smith, 131 F.3d 1392, 1400 (10th Cir. 1997). The

4

government can discharge this burden by showing that "a weapon was located near the general location where at least part of a drug transaction occurred." United States v. Vaziri, 164 F.3d 556, 568 (10th Cir. 1999); see also United States v. Lang, 81 F.3d 955, 964 (10th Cir. 1996) (remarking that the government must prove that "a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant") (citation omitted). "Once the government establishes that the gun was possessed in proximity to the drugs or transaction, the burden shifts to the defendant to 'show it is clearly improbable that the weapon was related to the offense.'" Flores, 149 F.3d at 1280 (quoting United States v. Robertson, 45 F.3d 1423, 1449 (10th Cir. 1995)); accord Smith, 131 F.3d at 1400. "We review the district court's interpretation of § 2D1.1(b)(1) de novo and the court's underlying factual findings for clear error." Dickerson, 195 F.3d at 1188; see also Vaziri, 164 F.3d at 568 (commenting that we "give due deference to the application of the Guidelines to the facts").

Gutierrez contends the evidence adduced at the sentencing hearing demonstrated that it was clearly improbable that the guns in his room were related to the underlying offense. Relying on his mother's testimony, Gutierrez claims that "the firearms were possessed for collection and no other purpose," Appellant's Brief at 3, and highlights the following passage from Application Note 3 to § 2D1.1: "The adjustment should be applied if the weapon was present,

unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet." Gutierrez also notes that the government presented nothing to contradict his mother's testimony, and maintains that "[t]he absence of any evidence to the contrary leaves but one reasonable interpretation of the evidence: that the guns were unrelated to the cocaine." Appellant's Brief at 3.

We conclude that the district court's application of § 2D1.1(b)(1) was not clearly erroneous. First, we reject Gutierrez's claim that his case is controlled by Application Note 3 to § 2D1.1. Nothing in the appellate record indicates that the firearms and silencer found in Gutierrez's room were "hunting" guns. Cf. United States v. Lopez-Sandoval, 146 F.3d 712, 716 (9th Cir. 1998) (rejecting a defendant's attempt to invoke Application Note 3 and affirming the district court's finding that handguns found in the defendant's home "were not hunting rifles"). Moreover, Application Note 3 "speaks only of arresting a defendant at his apartment, with the implication that the drug offense has taken place elsewhere." United States v. Green, 889 F.2d 187, 189 (8th Cir. 1989). Here, officers discovered Gutierrez's guns in the same room as the illegal drugs. Second, Mrs. Gutierrez's testimony that her son was a gun collector hardly demonstrates that it was "clearly improbable" that the guns were related to the

6

underlying offense. As the government aptly notes in its brief, "the existence of a gun collection and the use of firearms in connection with a drug offense are not mutually exclusive." Brief of Appellee at 6 . Put another way, "the use or intended use of firearms for one purpose, even if lawful, does not preclude the use of the firearm for the prohibited purpose of facilitating drug trade, and therefore does not automatically remove the firearm from the purview of U.S.S.G. § 2D1.1(b)(1)." Brown v. United States , 169 F.3d 531, 533 (8th Cir. 1999). Third, the fact that the guns in Gutierrez's room may have been unloaded also fails to establish "clear improbability." Officers discovered not only guns but also "assorted ammunition" in Gutierrez's room. The presence of ammunition suggests that the guns could have been loaded if necessary. Cf. Green , 889 F.2d at 189 (affirming a sentence enhancement in part because an unloaded gun "was readily accessible" to the defendant, "as was her ammunition supply, for use during a drug transaction"). Furthermore, "[t]hat a weapon is unloaded is not dispositive" for purposes of § 2D1.1(b)(1). United States v. Caicedo , 103 F.3d 410, 412 (5th Cir. 1997); accord United States v. Rowley , 975 F.2d 1357, 1363-64 (8th Cir. 1992); United States v. Heldberg , 907 F.2d 91, 94 (9th Cir. 1990). [3] The

_____

[3] As the Fifth Circuit explained in United States v. Paulk , 917 F.2d 879 (5th Cir. 1990), § 2D1.1(b)(1)

was designed to provide added punishment for those drug offenders
(continued...)

7

district court did not err in enhancing Gutierrez's sentence under U.S.S.G. § 2D1.1(b)(1).

AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

---

[3](...continued)
who heighten the danger inherent in drug trafficking by possession of dangerous weapons. The mere presence of a handgun can escalate the danger inherent in such situations. Since it is difficult, if not impossible to tell from sight whether a gun is loaded or operational, an unloaded or broken gun may be of use in a criminal act. Flashing an unloaded gun often has the same effect as waving a loaded one. It "'[i]nstills fear in the average citizen' and 'as a consequence . . . creates an immediate danger that a violent response will ensue.'" Although the gun may not be able to inflict harm, its appearance may evoke it.

Id. at 882 (citations omitted, brackets and ellipsis in original).