**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 4 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

SPENCER L. JONES,

    Defendant-Appellant.

No. 99-3332

(D.C. No. 97-CR-20005-DES)
(D.Kan.)

**ORDER AND JUDGMENT** *

Before **EBEL** and **BRISCOE,** Circuit Judges, and **COOK**, District Judge. **

Defendant Spencer Jones appeals the sentence imposed after his guilty plea. Specifically, he appeals the district court's finding that he possessed a firearm during a drug transaction. This finding resulted in a two-level increase in Jones' offense level under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"). We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

** The Honorable H. Dale Cook, Senior District Judge, Northern District of Oklahoma, sitting by designation.

# I

This case is before us for the second time. Jones' first appeal revolved around the following facts:

> On January 21, 1997, a grand jury returned a two-count indictment charging Defendant with distribution of crack cocaine in violation of 21 U.S.C. § 841(a)(1). An additional indictment was returned against Defendant on April 9, 1997, charging him with another count of distribution of crack cocaine and with using or carrying a firearm in connection with that offense in violation of 18 U.S.C. § 924(c). The government offered to enter into a plea agreement with Defendant, whereby the government would dismiss the counts contained in the April 9, 1997, indictment in exchange for Defendant's guilty plea to the counts contained in the January 21, 1997, indictment. Defendant accepted the government's offer.
> . . . [T]he [district court] accepted Defendant's plea of guilty and entered judgment against him. Ten days after the Rule 11 hearing, Defendant filed a motion to withdraw his plea alleging that his counsel was ineffective and, as a result, his plea was involuntary. The district court denied the motion.
> . . . At the sentencing hearing, Defendant's counsel objected to the presentence investigation report. The district court, without making specific findings, overruled the objections and sentenced Defendant to 324-months imprisonment.

United States v. Jones, 168 F.3d 1217, 1219 (10th Cir. 1999) ("Jones I"). We held in Jones I that (1) the district court acted within its discretion when it denied Jones' motion to withdraw his guilty plea; and (2) the district court's failure to make specific findings regarding Jones' objections to the presentence report violated Federal Rule of Criminal Procedure 32(c)(1). Accordingly, we affirmed Jones' conviction and remanded the case for additional sentencing proceedings consistent with Rule 32(c)(1).

2

At issue in the instant appeal is a factual finding made by the district court on remand. The revised presentence report submitted by the probation office set Jones' base offense level at 32. The report also stated that Jones possessed a firearm during an April 9, 1997 drug transaction, which increased his offense level to 34 under U.S.S.G. § 2D1.1(b)(1). Jones objected to the two-level increase, arguing that he did not use or possess a gun in connection with the April 9 transaction. After conducting a hearing, the district court determined there was "sufficient evidence to support statements contained in the Pre-Sentence Investigation Report and that the Defendant did possess a firearm during the drug transaction on April 9, 1997." Record on Appeal ("ROA"), Vol. II at 75-76. The court thus concluded that "a two-level adjustment [wa]s appropriate," and sentenced Jones to a prison term of 210 months. Id. at 76.

Two witnesses testified at the hearing about the April 9 transaction. The first witness was Jones, who testified that he was contacted in 1997 by Anthony Reed. Reed, who was acting as a cooperating witness for the government, told Jones that he was interested in buying some cocaine and asked if Jones could arrange the deal. Jones testified that he felt he "owed" Reed because in 1995 Reed had "saved [his] life." Id. at 11. For that reason, Jones arranged a cocaine sale between Reed and another individual in an area of Kansas City, Kansas, known as "the projects." Id. at 13. Jones testified that Reed and the seller drove

to an agreed location in the projects and parked their cars across the street from one another.   Jones, who was already in the neighborhood visiting his girlfriend, walked to Reed's car.   Jones testified that he only had a beer in his hand when he approached Reed's vehicle,    which he asked Reed to hold while he brokered the drug transaction:

> Q.  . . . Did you have a gun at that time?
> A.  No, ma'am, I didn't.
> Q.  Okay.  What – and so what is it exactly that you gave [Reed] to hold?
> Q.  I gave him my beer, because I didn't want to go over there, have anything in my hand when I went over to the – to the car.
> Q.  Okay.  Did you say something to Anthony Reed to the effect of, "Would you hold my strap"?
> A.  Yeah, I told him to hold my strap.
> Q.  Okay.  What does that mean?
> A.  Strap means like – it could mean anything.  It could mean – if you strap with something, it means like you've got it.  Like if you strap with money, you've got money or it can mean a gun, do you know what I'm saying, or it can mean anything.  But when I was telling him to hold my strap, I was telling him would he hold my beer, do you know what I'm saying, it's just a slang for when you've got something, do you know what I'm saying, hold – I was saying, "Would you hold this for me."

Id. at 16.  Jones then carried Reed's money to the seller, exchanged the money for cocaine, and carried the cocaine back to Reed.

The second witness at the hearing was FBI special agent Craig Arnold. Arnold testified that recording devices and a transmitter were installed in Reed's car, and that he and other agents searched the vehicle both before and after Reed traveled to the projects to ensure that it contained no contraband or weapons.

4

Arnold stated that he did not observe the April 9 transaction while it was taking place, but instead recorded the conversation between Reed and Jones on tape. While recording the conversation, agents heard Reed say (after Jones left the car to exchange Reed's money for drugs) that Jones "just handed me a big-assed, mother fucking gun. I've got his gun." Id. at 69. Agents also listened as Reed provided detailed information about the gun during the course of the transaction, including the weapon's make and serial number. After the tape was played in open court, Arnold testified as follows:

> Q. And you heard on the tape the Defendant saying, you know, "Here, you can hold my strap." What, in your experience, does that mean?
> A. In my experience, ma'am, that refers to a handgun. Either, "take my strap," meaning take my handgun, or "I'm strapped," meaning I have a handgun on me.
> Q. Okay. And it appears that . . . [Reed] says, "No man, I don't – I don't want – " he makes that statement. What is that – what is he talking about?
> A. I'm not – in what context?
> Q. Well, after he says, "You can hold my strap," Anthony Reed says, "No man, I don't – " you know.
> A. Uh-huh, uh-huh. It seemed that [Reed] didn't want to hold his weapon. . . .

ROA, Vol. II at 45.

## II

The starting point for our analysis is U.S.S.G. § 2D1.1(b)(1). That section of the Guidelines directs a district court to add two levels to a defendant's base

offense "[i]f a dangerous weapon (including a firearm) was possessed" during certain drug crimes. The government initially bears the burden of "proving possession by a preponderance of the evidence." United States v. Vaziri, 164 F.3d 556, 568 (10th Cir. 1999) (citing United States v. Roberts, 980 F.2d 645, 647 (10th Cir. 1992)); accord United States v. Dickerson, 195 F.3d 1183, 1188 (10th Cir. 1999). Once the government discharges this burden, the defendant can avoid an enhanced sentence only if he demonstrates that it was "clearly improbable that the weapon was connected with the offense." Dickerson, 195 F.3d at 1188 (quoting U.S.S.G. § 2D1.1. comment. (n.3)); see also Vaziri, 164 F.3d at 568 (reiterating that the burden shifts to the defendant to "prov[e] the exception"). "We review the district court's interpretation of § 2D1.1(b)(1) de novo and the court's underlying factual findings for clear error." Dickerson, 195 F.3d at 1188; accord Vaziri, 164 F.3d at 568. We give "due regard to the opportunity of the district court to judge the credibility of the witnesses," and "due deference to the district court's application of the guidelines to the facts." United States v. Farnsworth, 92 F.3d 1001, 1009 (10th Cir. 1996) (quoting 18 U.S.C. § 3742(e)); accord Vaziri, 164 F.3d at 568.

Jones does not object to the district court's interpretation of U.S.S.G. § 2D1.1(b)(1), but argues that the court's decision to enhance his sentence was based on unreliable evidence. According to Jones, Reed's statement that Jones

6

possessed a gun at the time of the April 9 transaction was unreliable because (1) Jones "steadfastly denied involvement of a gun"; (2) Arnold merely "recounted what he was told" by Reed and had no opportunity to observe Reed during the transaction; (3) Reed did not testify at sentencing and his hearsay description of the transaction was neither corroborated by other evidence nor "placed in a sworn affidavit"; (4) agents never recovered the gun described by Reed; and (5) agents paid Reed $5,000 to serve as a cooperating witness. Brief of the Appellant ("Aplt. Br.") at 12-13. Jones also points out that we held in United States v. Ortiz, 993 F.2d 204, 207-08 (10th Cir. 1993), and United States v. Fennell, 65 F.3d 812, 813-14 (10th Cir. 1995), that uncorroborated out-of-court statements are insufficient to sustain sentence enhancements. With these authorities in mind, Jones maintains that "the two-level enhancement in [his] base offense level from a level 32 to a level 34 was improper and unlawful." Aplt. Br. at 15.

It is true that the Guidelines and principles of due process prohibit a sentencing court from using patently untrustworthy evidence. As the commentary accompanying one section of the Guidelines explains:

> In determining the relevant facts, sentencing judges are not restricted to information that would be admissible at trial. Any information may be considered, so long as it has sufficient indicia of reliability to support its probable accuracy. Reliable hearsay evidence may be considered. Out-of-court declarations by an unidentified informant may be considered where there is good cause for the non-disclosure of the informant's identity and there is sufficient corroboration by other means. Unreliable allegations shall

not be considered.

U.S.S.G. § 6A1.3, Commentary (citations omitted); see also Farnsworth, 92 F.3d at 1010 (quoting Fennell for the proposition that "reliable hearsay may be used in the determination of a sentence"). Similarly, "[a]s it pertains to hearsay information, due process requires that the information used have 'some minimal indicium of reliability beyond mere allegation.'" United States v. Beaulieu, 893 F.2d 1177, 1181 (10th Cir. 1990) (citation omitted); see also United States v. Sunrhodes, 831 F.2d 1537, 1542 (10th Cir. 1987) ("Due process insures that a defendant will not be sentenced on the basis of 'misinformation of a constitutional magnitude.'") (citation omitted).

Nonetheless, Jones' case is distinguishable from Ortiz and Fennell. First, Reed's out-of-court statement that Jones handed him "a big-assed, mother fucking gun" and his description of the weapon were both spontaneous and contemporaneous. These statements closely resemble a "present sense impression" under Federal Rule of Evidence 803(1) (or perhaps an "excited utterance" under Federal Rule of Evidence 803(2)), making them sufficiently reliable for sentencing purposes. See generally United States v. Santos, 201 F.3d 953, 963-64 (7th Cir. 2000) (recognizing that "a report of a contemporaneous event" is "a reliable form of hearsay" because the declarant "has less time to forget what actually happened or to edit or revise his report of it"); Samuels v.

8

Mann, 13 F.3d 522, 527 (2d Cir. 1993) (stating that contemporaneous identifications "generally are given much more credence" and are "considered reliable enough to justify their exclusion from the hearsay rule"); United States v. Parker, 936 F.2d 950, 954 (7th Cir. 1991) ("The underlying rationale of the present sense impression exception is that substantial contemporaneity of event and statement minimizes unreliability due to defective recollection or conscious fabrication.") (citation omitted). Second, additional evidence corroborates Reed's description of the make and serial number of the weapon. Arnold testified that agents used the information provided by Reed to confirm that the weapon was "an actually-manufactured firearm." ROA, Vol. II at 69. Using the serial number provided by Reed, agents traced the gun to its last known owner. This, too, minimizes the probability that Reed's statements were fabricated. Further, Jones admitted he told Reed to hold his "strap." It was within the district court's discretion to find Arnold's definition of that term more credible than the definition Jones provided. The district court did not err in enhancing Jones' sentence under U.S.S.G. § 2D1.1(b)(1).

AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

9