**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 25 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MICHAEL R. SHIVELY,

Defendant - Appellant.

No. 00-3220

(D. Kansas)

(D.C. No. CR-99-10126-01)

**ORDER AND JUDGMENT** [*]

Before **SEYMOUR** , **ANDERSON** , and **KELLY** , Circuit Judges.

Defendant Michael Shively appeals the district court's denial of his motion to suppress evidence. We affirm.

On September 16, 1999, Defendant telephoned his son Chris and told him, in slurred speech, that he had ingested a large quantity of drugs in an attempt to kill himself. Chris reported the phone call to his mother, Defendant's ex-wife, Melanie Shively. She called the Wichita Police Department to report what her

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

son had told her. Based on the information received from Ms. Shively, the Wichita Police Department dispatched officers Steven Jerrell and Michael Butler to Defendant's residence to check on his welfare.

Upon arriving at Defendant's residence, the two officers began knocking at the door and yelling in an attempt to contact anyone inside. They checked all of the doors and windows and found them all to be locked. The officers could not see inside the home through any of the windows. They observed two vehicles at the residence. A check of the tags revealed that both vehicles were registered to Defendant at that address. The officers next obtained Defendant's phone number and reached only an answering machine. The message on the answering machine gave the number to a mobile phone which they also called. Nobody answered. The officers then contacted Defendant's uncle who indicated that if Defendant's cars were at the residence, he was probably inside.

Concerned about the safety of anyone inside the home, the officers decided to make their first entry into the home. Officer Butler knocked a small pane of glass out of a door at the rear of the home while Officer Jerrell announced "police" several times. Defendant finally responded and told the officers to leave. One of them asked him if he was all right and if he would come to the door. Defendant said something to the effect of, "fuck you, you come in here, I'll kill you." One of the officers then asked Defendant if he was armed, and he stated,

"fuck yes, come inside and find out." He went on to threaten the officers by saying, "if you come into my door, you're violating my rights and I will kill you."

At that point, the officers decided to contact a negotiator to help them deal with the situation. In the meantime, however, Officer Butler was able to contact Defendant by telephone. While the two were speaking on the phone, Defendant fired a shot inside the house. An officer eventually convinced Defendant to come outside the home. After a brief struggle, he was taken into custody. Officers then entered the home and performed a protective sweep to make sure that nobody else was inside. They found no other occupants, but observed numerous firearms in plain view. After Defendant was taken into custody, he told a police officer that he had a Beretta 9mm, a Glock .45, an SKS sniper rifle, two 30-30 rifles and several shotguns in his residence. However, he refused to give officers consent to search his home at that time.

Due to concern about Defendant's physical and mental well being, he was transported to a hospital for mental evaluation. Officer Butler went to the hospital and spoke with Defendant while he was restrained to a bed. During their conversation, Defendant expressed concern that his weapons would be confiscated and, allegedly, gave Officer Butler consent to search his home. Officer Butler radioed that consent to other officers who were still present at Defendant's residence. They again entered the home and began securing the various firearms.

However, while there, they discovered a stash of marijuana and drug paraphernalia. At that point, the officers exited the residence and obtained a search warrant. That warrant was executed in the early morning hours of the following day.

As indicated, the officers observed numerous firearms in Defendant's residence both during the protective sweep, and after Defendant stated to the officers that he was armed, and after he had fired a shot while speaking to the police on the telephone. They found additional weapons during the search pursuant to the warrant.

On September 28, 1999, Defendant was indicted on one count of unlawful possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). On January 3, 2000, Defendant filed a Motion to Suppress Evidence in which he argued that the firearms found at his residence should be excluded from evidence because the officers' forced entry, protective sweep and consent search violated his Fourth Amendment rights.

The district court agreed that the consent purportedly obtained from Defendant was invalid. However, it found that the first entry, made by breaking out a pane of glass in the back door, was justified by exigent circumstances. Those circumstances include Ms. Shively's indication that Defendant was suicidal, Defendant's failure to respond to the officers' efforts to contact him

inside the home and the presence of Defendant's vehicles indicating that he was likely inside. The court also, while expressing some reservations about the protective sweep of Defendant's home, found that because Defendant had informed officers that he was armed, had threatened to kill the officers if they entered his home and had fired a round in the home, a lawful warrant would have eventually been obtained and the evidence inevitably discovered. Accordingly, the district court applied the doctrine of inevitable discovery and denied Defendant's motion to suppress evidence on the ground that the evidence would have been lawfully discovered even if the officers had not conducted the protective sweep or consent search.

Following the district court's denial of his motion to suppress, Defendant entered into a plea agreement with the government whereby he agreed to plead guilty to the charge in the indictment. However, the plea agreement made a specific allowance for Defendant to appeal the district court's denial of his motion to suppress. After entering his plea, Defendant was sentenced to 51 months in prison followed by three years of supervised release.

On appeal, Defendant contends that the district court erred in denying his motion to suppress because the circumstances did not justify the officers' protective sweep of his residence after he was taken into custody outside the home. In reviewing the district court's denial of his motion to suppress, we

consider the totality of the circumstances and view the evidence in the light most favorable to the government.   United States v. Long  , 176 F.3d 1304, 1307 (10th Cir.) cert. denied , 528 U.S. 921 (1999).  We accept the district court's findings of fact unless clearly erroneous.   United States v. Green  , 178 F.3d 1099, 1104 (10th Cir. 1999).  Finally, we review the district court's determinations of reasonableness under the Fourth Amendment de novo, considering the totality of the circumstances.   United States v. Dickerson   , 195 F.3d 1183, 1186 (10th Cir. 1999).

After fully reviewing the briefs, examining the record and considering the arguments made before us at oral argument, we conclude that the district court did not err and AFFIRM the denial of Defendant's motion to suppress substantially on the grounds and for the reasons relied upon by the district court in its Order dated February 29, 2000.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge