**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 18 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JAMES A. HERNANDEZ,

    Defendant-Appellant.

No. 03-3208

(D.C. No. 02-CR-40102-01-JAR)
(D. Kansas)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **McKAY**, and **HARTZ**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of this

appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered

submitted without oral argument.

Defendant James A. Hernandez, who entered a conditional plea of guilty to

possession with intent to distribute methamphetamine, in violation of 21 U.S.C.

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

§ 841(a)(1) and (b)(1)(B), appeals the district court's denial of his two motions to suppress evidence. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

I.

The essential facts are not in dispute. On May 2, 2002, local officers and agents of the Kansas Bureau of Investigation (KBI) executed a search warrant at defendant's residence. KBI Agent Tim Holsinger had applied for and received the warrant the previous day. The warrant authorized a search of the residence for, among other things, chemicals and substances used to manufacture methamphetamine, laboratory equipment, recipes, firearms, and records of drug production and proceeds. The warrant was silent as to whether officers were to knock and announce. Holsinger testified that he had intended to apply for a no-knock warrant, but had forgotten to do so. He testified that prior to going onto the property to execute the warrant, he and other officers had planned to knock and announce.

When officers arrived at defendant's residence, they saw an individual later identified as Mark Wilson working on a vehicle in the driveway. The officers got out of their vehicles, drew their weapons, and ordered Wilson to the ground. The officers were wearing clothing that clearly identified them as officers. Because the officers believed their presence had been detected by occupants of the residence, they entered the unlocked front door to the residence, shouting "Police, search warrant," without knocking. ROA, Vol. IV at 29. During the search of the premises, officers found methamphetamine and

2

several items related to its manufacture.

At the suppression hearing, Holsinger and another agent who assisted in the execution of the warrant, Matthew Lyon, testified that the decision to make a no-knock entry was based on two concerns: (1) because of the commotion in the driveway, defendant would be aware of the officers' presence and might attempt to ambush them; and (2) defendant might attempt to destroy evidence. Lyon testified that "[t]he commotion was loud enough at the yard that there wasn't any question in my mind that the individuals who might have been remaining in the house would have known that we were present." Id. at 59. Holsinger testified that he was concerned for officer safety, based on two facts: (1) when Holsinger, acting in an undercover capacity, earlier met with defendant, defendant stated he would shoot a neighbor if she reported his drug activities to police; and (2) defendant had a criminal history, which included convictions for firearm possession. Holsinger had briefed the other officers regarding these circumstances prior to execution of the warrant and had described defendant as "an extremely high risk individual." Id. at 52. Holsinger also testified that, based on his experience, drug dealers usually possess firearms and users of methamphetamine are likely to be violent.

## II.

On appeal, as in the district court, defendant argues the warrant authorizing the search of his residence was not supported by probable cause, and, by failing to knock and

3

announce before entering his residence, the officers executed the warrant in an unreasonable manner. "In reviewing the denial of a motion to suppress, we view the evidence in the light most favorable to the government and accept the district court's factual findings unless clearly erroneous." United States v. Dickerson, 195 F.3d 1183, 1186 (10th Cir. 1999). "The ultimate determination of reasonableness under the Fourth Amendment is a question of law we review de novo, considering the totality of the circumstances." Id.

*Probable cause to support warrant*

In deciding whether there is probable cause to issue a warrant, the issuing judge must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). "Because of the 'strong preference' for searches conducted pursuant to a warrant, the Supreme Court has instructed us to pay 'great deference' to a magistrate judge's determination of probable cause." United States v. Nolan, 199 F.3d 1180, 1182 (10th Cir. 1999) (quoting Gates, 462 U.S. at 236). Ultimately, "[t]he test is whether the facts presented in the affidavit would 'warrant a man of reasonable caution' to believe that evidence of a crime will be found at the place to be searched." Nolan, 199 F.3d at 1183 (quoting Texas v. Brown, 460 U.S. 730, 742 (1983) (plurality opinion)).

4

According to Holsinger's May 1, 2002, affidavit, on December 20, 2001, a confidential informant advised officers that he had purchased methamphetamine from defendant in October 2001, and that defendant had manufactured it in a shed behind his residence. On February 22, 2002, the same informant and Holsinger, acting undercover, met with defendant and, during the meeting, defendant agreed to purchase pseudoephedrine pills from Holsinger and agreed to sell methamphetamine to the informant. Holsinger and the informant met with defendant again on March 14, 2002, and defendant promised to deliver one-half ounce of methamphetamine in a few days, stated he needed to acquire some anhydrous ammonia, and admitted he was buying 2,000 to 3,000 amphetamine pills at a time from a supplier. A month later, defendant's neighbor called the KBI crime lab and reported that defendant was cooking methamphetamine and that 10-15 cars were seen at defendant's residence on a nightly basis. On May 1, 2002, Holsinger was advised by a local sheriff that he had received a tip in February 2002 from a relative of defendant's girlfriend that defendant's residence regularly smelled like ammonia and other chemicals.

Defendant argues the information in the affidavit had become stale. "Probable cause to search cannot be based on stale information that no longer suggests that the items sought will be found in the place to be searched." United States v. Snow, 919 F.2d 1458, 1459 (10th Cir. 1990). "However, the determination of whether information is stale depends on the nature of the crime and the length of criminal activity, not simply the

number of days that have elapsed between the facts relied upon and the issuance of the warrant." United States v. Myers, 106 F.3d 936, 939 (10th Cir. 1997) (concluding gap of five months between tip and search warrant did not render information stale when drug activities were demonstrated to be continuous and ongoing). "[T]he passage of time becomes less significant when the criminal offense is continuous." United States v. Miles, 772 F.2d 613, 616 (10th Cir. 1985). In this case, we agree with the district court that the affidavit established that defendant's drug activities were ongoing and continuous and that the passage of time did not render the information stale.

Defendant also argues the affidavit failed to establish the reliability of the informant and the neighbor. However, information provided by the informant and the neighbor was independently corroborated by Holsinger's undercover investigation. Taken together, the evidence in the affidavit would have warranted a person of reasonable caution to believe that evidence of a crime would be found in defendant's residence.[1] Nolan, 199 F.3d at 1183.

*Failure to knock and announce*

"State law enforcement officers are prohibited by the Fourth Amendment from

---

[1] Even if we were to conclude the warrant was not supported by probable cause, we would apply the good faith exception to the exclusionary rule set forth in United States v. Leon, 468 U.S. 897 (1984). "In Leon, the Supreme Court modified the Fourth Amendment exclusionary rule by holding that evidence seized pursuant to a search warrant later found to be invalid need not be suppressed if the executing officers acted in objectively reasonable, good-faith reliance on the warrant." United States v. Rowland, 145 F.3d 1194, 1206 (10th Cir. 1998).

conducting 'unreasonable searches and seizures.'" United States v. Moore, 91 F.3d 96, 98 (10th Cir. 1996). In Wilson v. Arkansas, 514 U.S. 927, 929 (1995), the Court recognized that "[a]t the time of the framing, the common law of search and seizure recognized a law enforcement officer's authority to break open the doors of a dwelling, but generally indicated that he first ought to announce his presence and authority." The Court held that the "knock and announce" rule "forms a part of the reasonableness inquiry under the Fourth Amendment." Id.

A recognized exception to the "knock and announce" rule permits "no-knock" entries when police "have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." Richards v. Wisconsin, 520 U.S. 385, 394 (1997). "[I]n each case, it is the duty of a court confronted with the question to determine whether the facts and circumstances of the particular entry justified dispensing with the knock-and-announce requirement." Id.

In this case, we agree with the district court that the facts and circumstances justified the officers' decision to enter defendant's residence without knocking. The officers not only suspected that defendant possessed drugs, but also that he might be armed. In light of defendant's firearm possession convictions and his threat to shoot his neighbor, the officers' suspicions in that regard were reasonable. See United States v.

7

King, 222 F.3d 1280 1284 (10th Cir. 2000) (affirming denial of motion to suppress after concluding no-knock entry was reasonable manner of executing arrest warrant where there was evidence that defendant was in possession of firearm and willing to use it). Holsinger and Lyon testified they were concerned about officer safety. Further, officers reasonably suspected that defendant was aware of their presence before they reached the door to the residence. Officers loudly announced themselves when they confronted Wilson in the driveway and their clothing clearly identified them as police officers. It was reasonable for the officers to conclude that defendant had been alerted to their presence by the commotion and that he might be inside the residence preparing an ambush.

Because we conclude the no-knock entry was justified by the officers' reasonable concern for their safety, we need not decide whether destruction of evidence also justified the entry.

AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

8