**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 24, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

     Appellee-Plaintiff,

v.

SCOTT ALLEN JONES,

     Appellant-Defendant.

No. 19-6182
D.C. No. 5:18-CR-00223-R-1
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **PHILLIPS**, **SEYMOUR** and **CARSON**, Circuit Judges.

_____

Scott Allen Jones was convicted of a single count of possession of a firearm and ammunition after conviction of a felony in violation of 18 U.S.C. § 922(g)(1). He appeals, challenging the district court's denial of his motion to suppress evidence based on an alleged illegal search of his grandfather's shop. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## Background

On August 21, 2018, Rick Stevens, a bail bondsman, notified Woodward County Sheriff's Deputy Caleb Merriman that defendant Scott Allen Jones was living in a shop located at 3415 Eighth Street, Woodward, Oklahoma, and was presently there. There were two outstanding arrest warrants for Mr. Jones, one for failing to appear at a hearing on a charge of driving with a suspended license and another for failing to appear at a hearing on a charge of assault and battery. Mr. Stevens did not disclose the source of his information to Deputy Merriman but indicated he was familiar with Mr. Jones and his girlfriend, Ashton Chavez, because he had been their bail bondsman for years. Mr. Stevens was also a known informant who had previously provided Deputy Merriman with reliable information about the location of other people. Based on this tip, Deputy Merriman contacted Special Agents Kent Brown and Keith Frutiger of the Federal Bureau of Investigations ("FBI") and others to ask for their assistance in arresting Mr. Jones.[1]

Before he was contacted by Deputy Merriman, Special Agent Brown already believed that Mr. Jones was living at the Woodward property. From multiple prior witness and victim interviews, he knew of several individuals who had been taken by Mr. Jones and others to the shop on the Woodward property, where they had then been tied

---

[1] Deputy Merriman made this request because he knew of Mr. Jones's propensity for violence. *See* Rec., vol. III at 30. Mr. Jones was believed to be a "shot caller" for the Universal Aryan Brotherhood, a violent prison and street gang, *id.* at 8, and his assault and battery charge was for allegedly dragging a woman by her hair and repeatedly kicking her in the ribs, Rec., vol. I at 41.

up, beaten, assaulted, maimed, and stabbed.   Also, by reviewing recordings from a continuously operating CCTV pole camera located approximately 150 yards from the Woodward property, Special Agent Brown had noticed Mr. Jones regularly going in and out of the shop, changing his outfits while inside, and receiving deliveries.   So when Deputy Merriman called on August 21, 2018, Special Agent Brown confirmed that the FBI believed Mr. Jones was living at the shop.

Shortly thereafter, Deputy Merriman, Special Agent Brown, Mr. Stevens, and others went to the Woodward property and arrested Mr. Jones.   While conducting a protective sweep, Deputy Merriman saw a gun wedged between couch cushions.   He then obtained a search warrant and collected the gun.   On September 5, 2018, a federal grand jury indicted Mr. Jones for possessing a firearm after a felony conviction in violation of 18 U.S.C. §§ 922(g)(1).   Mr. Jones filed a motion to suppress the evidence seized from the shop, arguing that the shop belonged to his grandfather and police had neither a search warrant nor any reason to believe he was living there.   The district court denied his motion after an evidentiary hearing.   Mr. Jones was then convicted by a jury and sentenced to 120 months' imprisonment.   He appeals, asking this Court to reverse the district court's denial of his motion to suppress.

**Standard of Review**

We review the district court's denial of a motion to suppress by considering the totality of the circumstances and viewing the evidence "in the light most favorable to the government."   *United States v. Gay*, 240 F.3d 1222, 1225 (10th Cir. 2001) (citing *United States v. Long*, 176 F.3d 1304, 1307 (10th Cir. 1999)).   "We accept the district court's

3

findings of facts unless clearly erroneous." *Id.* "The ultimate determination of reasonableness under the Fourth Amendment is a question of law we review de novo, considering the totality of the circumstances." *Id.* at 1226 (quoting *United States v. Dickerson*, 195 F.3d 1183, 1186 (10th Cir.1999)).

## Discussion

Mr. Jones disputes neither the validity of the warrant for his arrest nor the authority of law enforcement officers to execute an arrest warrant by entering an arrestee's residence. He argues instead that because the shop at the Woodward property belonged to his grandfather, Deputy Merriman was required to obtain a search warrant before entering the property to arrest him.

In a pair of decisions in the early 1980s, the Supreme Court provided the framework for when law enforcement may enter a home to arrest the subject of an arrest warrant without a search warrant. In *Payton v. New York*, 445 U.S. 573, 603 (1980), the Court ruled that "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." A year later, in *Steagald v. United States*, 451 U.S. 204, 205-06 (1981), the Court held that absent exigent circumstances or consent, officers could not search a third party's home for the subject of an arrest warrant without first obtaining a search warrant. Mr. Jones contends the information available to Deputy Merriman on August 21, 2018, did not support a reasonable belief that Mr. Jones was living at the shop or that he was there on that morning. Accordingly, he asserts that *Steagald*, not *Payton*, is the proper analysis.

4

"In a *Payton* analysis, this court recognizes a two-prong test: officers must have a reasonable belief the arrestee (1) lived in the residence, and (2) is within the residence at the time of entry." *Gay*, 240 F.3d at1226 (citing *Valdez v. McPheters*, 172 F.3d 1220, 1224-25 (10th Cir.1999)). "Thus, whether *Steagald* or *Payton* applies is resolved under the first prong of the *Payton* test." *Id.*

### A. Reasonable belief that Mr. Jones was living at the property

Our cases make clear that *Payton's* first prong is satisfied here if on the morning of August 21, 2018, Deputy Merriman had an objectively reasonable belief that Mr. Jones was residing at the Woodward property. In *Gay*, the officers executing an arrest warrant possessed an objectively reasonable belief that a suspect lived at the location they entered because the officers "engaged in a face-to-face discussion with the informant, who knew [defendant] was currently involved in criminal activity, told the officers the location of the residence based on personal knowledge, personally accompanied the officers to the residence, pointed at the dwelling, and presumably remained accountable if the tip was fabricated." *Id.* at 1227.

In the present case, Mr. Stevens was bail bondsman for Mr. Jones and Ms. Chavez, had known them for several years, told Deputy Merriman about the location of Mr. Jones's residence, and went along in person as Deputy Merriman arrested Mr. Jones. Deputy Merriman appropriately relied on Mr. Stevens's tip because Mr. Stevens had previously provided credible information about the location of other individuals. *See Adams v. Williams*, 407 U.S. 143, 146 (1972) (finding officer was justified in relying on informant's tip because informant was known to officer personally and had provided

officer with information in the past.); *United States v. Brown*, 496 F.3d 1070, 1075 (10th Cir. 2007) ("The veracity of identified private citizen informants (as opposed to paid or professional criminal informants) is generally presumed in the absence of special circumstances suggesting that they should not be trusted.") (quoting *United States v. Elmore*, 482 F.3d 172, 180 (2d Cir. 2007)). In addition, Special Agent Brown confirmed to Deputy Merriman that the FBI knew Mr. Jones was living at the Woodward property. The collective knowledge doctrine enabled Deputy Merriman to rely on that information. *United States v. Chavez*, 534 F.3d 1338, 1345 (10th Cir. 2008). Viewing this evidence in the light most favorable to the government, Deputy Merriman had an objectively reasonable belief that Mr. Jones was living at the Woodward property on the morning of August 21, 2018.

### B. Reasonable belief that Mr. Jones was currently at his residence

The second prong of the Payton test requires Deputy Merriman to have had a reasonable belief that Mr. Jones was physically present at the shop on the morning of his arrest. As discussed above, Mr. Stevens, a credible informant, told Deputy Merriman that Mr. Jones was currently at the Woodward property. He then accompanied Deputy Merriman, Special Agent Brown, and others to the property, making himself liable to accountability if his tip was fabricated. The district court concluded that this evidence was sufficient to support a reasonable belief that Mr. Jones was at the Woodward property at the time of his arrest. Viewing the evidence in the light most favorable to the government, we agree.

Based on the foregoing, we affirm the district court's denial of Mr. Jones's motion

to suppress.

                              Entered for the Court


                              Stephanie K. Seymour
                              Circuit Judge