**UNITED STATES of America,**

v.

**Victor D. HNE.**

**No. CR. 99–055–T.**

United States District Court,
D. Rhode Island.

June 16, 2000.

Zechariah Chafee, A.U.S.A., U.S. Attorney's Office, Providence, RI, for plaintiff.

Mary June Ciresi, Michael J. Lepizzera, Law Offices of William C. Dimitri, Providence, RI, for defendant.

### *MEMORANDUM AND ORDER*

TORRES, District Judge.

Victor D. Hne has moved for reconsideration of a 108–month prison sentence imposed for possession of cocaine base with intent to distribute. More specifically, Hne asks this Court to revisit its refusal to consider an objection, raised by Hne on the day of sentencing, to the manner in which the Pre–Sentence Investigation Report (the "PSR") calculated his guideline sentencing range.

---

**2.** See the Court's Opinion and Order of December 15, 1998 (Dkt.# 34).

Because I find that Hne has failed to establish "good cause" for not raising his objection within the time prescribed by Fed.R.Crim.P. 32(b)(6) and Local R. 40.2, his motion for reconsideration is denied.

### Background

On November 2, 1999, Hne pled guilty to one count of possessing 50 grams or more of cocaine base with the intent to distribute, in violation of 21 U.S.C. §§ 841(a) & (b)(1)(A).

After accepting the plea, this Court advised Hne of his right to review the PSR when it was completed; to discuss it with his counsel, Mary Ciresi; and to file objections to anything in the report that he disputed. The Court further informed Hne that any objections had to be filed within 14–days after the PSR was made available for his inspection and that failure to object within the 14 day period would constitute a waiver.

On January 21, 2000, a copy of the PSR was furnished to Hne and his counsel. It showed a Base Offense Level of 36, (PSR at ¶ 16), based on the fact that 332.7 grams of crack cocaine and $8,265 in cash were found in Hne's apartment. (PSR at ¶ 8.) Pursuant to the First Circuit's decision in *United States v. Gerante,* 891 F.2d 364 (1st Cir.1989), the probation officer converted the cash into an equivalent quantity of crack cocaine, (PSR at ¶ 16), using a conversion factor of $1,000 per ounce, the estimated street value of crack cocaine.

Hne filed a timely objection to including the cash in the calculation, claiming that it was not the proceeds of past drug sales. Hne did not object to any other portion of the PSR.

Hne appeared for sentencing on February 25, 2000, three weeks after the deadline for filing objections had passed. At that time, attorney Michael Lepizzera announced that he had been retained to represent Hne and sought to enter his appearance as Hne's counsel, even though he agreed that Ciresi was "doing a good job" and Hne had no complaints about Ciresi's performance. Lepizzera disclosed that he had met with Hne several times during the previous few weeks and stated that he was fully prepared to proceed with the sentencing. As a result, this Court allowed Lepizzera to enter his appearance and granted Ciresi's motion to withdraw and began the sentencing hearing.

After being cautioned that false testimony regarding the source of the cash found in Hne's apartment could jeopardize Hne's eligibility for "safety valve" relief from the ten-year mandatory minimum sentence contained in 21 U.S.C. § 841(b)(1)(A),[1] Hne withdrew his objection to treating the cash as drug proceeds.

However, Hne sought to raise a new objection; namely, that the conversion rate of $1,000 per ounce of crack cocaine was erroneous. Hne cited affidavits filed by a law enforcement officer in an unrelated case describing controlled purchases of crack cocaine for prices ranging from approximately $1,000 to $5,600 per ounce. Based on that information, Hne argued that a conversion factor of $1,500 per ounce should have been used and that it would have resulted in a guideline range of 87–108 months instead of 108–135 months.

This Court refused to consider the proffered objection because it was not timely; no good reason was presented for the delay in asserting it; and entertaining the objection would either deprive the government of a fair opportunity to respond or would require a continuation to afford it that opportunity, thereby setting a precedent that could convert every sentencing into a multi-part proceeding.

### Discussion

Fed.R.Crim.P. 32(b)(6)(B) states that "[w]ithin 14 days" after receiving the PSR

---

1. Both 18 U.S.C. § 3553(f) and the Sentencing Guidelines, §§ 2D1.1(b)(6), 5C1.2 provide for a sentence reduction if the defendant meets certain criteria set forth therein, including truthfully providing the government will all information and evidence relating to the offense.

from the probation officer, counsel for both the government and the defendant must file "any objections to any material information, sentencing classifications, sentencing guideline ranges, and policy statements contained in or omitted from the presentence report." *See also* Local R. 40.2(a) (containing nearly identical language).

The 14–day time limit is more than a mere technicality. It is designed to ensure that the sentencing process is fair, efficient and expeditious. If defendants or prosecutors are allowed to ignore this requirement and wait until the day of sentencing to raise objections, the sentencing court would be forced to choose between two equally unpalatable alternatives. It could proceed with the sentencing as scheduled, thereby depriving the opposing party of an adequate opportunity to counter the objection, and rendering a decision made without benefit of all of the relevant facts and/or the applicable law. Alternatively, the court could postpone the sentencing in order to afford the opposing party an opportunity to respond, thereby delaying the proceeding, squandering judicial resources, and interfering with the efficient administration of justice.

■ Of course, there are cases when justice requires that objections to the PSR be considered even though they were not timely filed. Both Fed.R.Crim.P. 32(b)(6)(D) and Local R. 40.2(d) allow objections to be made after the 14–day deadline for "good cause" shown. Good cause may consist either of a valid reason for the delay or a showing that the matter being challenged would result in the defendant receiving a sentence that "is simply wrong, with no basis in fact." *United States v. Young,* CR. 95–851, 1996 WL 737197, at *2 (S.D.N.Y. Dec.24, 1996). Neither factor is present in this case.

■ Hne offers no explanation for waiting until the eleventh-hour to raise the proffered objection. Although he changed

counsel on the day of sentencing, there is no suggestion that his previous counsel was remiss in failing to raise the issue. On the contrary, both Hne and his new counsel made it clear that they considered previous counsel to have done a good job, an opinion that this Court shares. Moreover, previous counsel's failure to raise the proffered objection was not cited as a reason for the change in representation.

More importantly, Hne had been consulting with new counsel for some time before sentencing. Consequently, he had ample opportunity to file his objection before the date set for sentencing.[2]

Nor has Hne established that the conversion factor of $1,000 per ounce "is simply wrong." Hne's drug activities took place in the metropolitan Providence area, while the affidavits on which he relies refer to the price of crack cocaine in the smaller Town of Westerly, approximately 50 miles away. Moreover, the quantities involved in the Westerly case were much smaller than the quantity seized from Hne's apartment. In addition, the affidavits in the Westerly case show that the price of the crack purchased varied considerably and was inversely proportional to the quantity involved in each transaction. Thus, according to Hne's own calculations, the Westerly sales can be summarized as follows:

| Cocaine Base Amount | Transaction Price | Price Per Ounce |
|---|---|---|
| 1.01 grams | $200 | $5,600 |
| 1.03 grams | $200 | $5,600 |
| 5.66 grams | $500 | $2,504 |
| 1.82 grams | $200 | $3,115 |
| 0.59 grams | $100 | $4,805 |
| 2.42 grams | $300 | $3,514 |
| 2.55 grams | $350 | $3,891 |

---

**2.** The affidavits relied upon by Hne were filed on February 2, 2000, more than three weeks before Hne's sentencing hearing and before expiration of the 14–day period.

| | | |
|---|---|---|
| 6.36 grams | $700 | $3,120 |
| 1.07 grams | $200 | $5,299 |
| 7.39 grams | $650 | $2,493 |
| 9.46 grams | $600 | $1,798 |
| 6.29 grams | $600 | $2,704 |
| 2.30 grams | $300 | $3,697 |
| 5.15 grams | $300 | $1,651 |
| 2.33 grams | $170 | $2,161 |
| 4,80 grams | $500 | $2,953 |
| 13.62 grams | $500 | $1,035 |
| 13.69 grams | $500 | $1,035 |
| 2.64 grams | $200 | $2,147 |

It is apparent from these figures that, for quantities in excess of ten grams, the price was very close to the conversion factor of $1,000 per ounce used in calculating Hne's sentence and much farther from the figure of $1,500 an ounce used by Hne.

In short, Hne has failed to demonstrate. that applying the conversion factor of $1,000 per ounce was "simply wrong."

### *Conclusion*

For all the foregoing reasons, the defendant's motion for reconsideration of his sentence is hereby DENIED.

IT IS SO ORDERED,