UNITED STATES of America,
Plaintiff,

v.

William C. ALBRIGHT, Defendant.

No. 98–40107–03–SAC.

United States District Court,
D. Kansas.

Aug. 11, 2000.

Thomas B. Frost, III, Manzanares Law Bldg., Topeka, KS, for defendant.

## RULING ON OBJECTIONS TO PRESENTENCE REPORT

CROW, Senior District Judge.

The defendant is one of six defendants named in a 25–count superseding indictment charging drug trafficking offenses. On October 15, 1999, the defendant pleaded guilty to count 6 for maintaining a residence for the purpose of using, storing and distributing illegal narcotics in violation of 21 U.S.C. § 856. The presentence report ("PSR") calculates a total offense level of 12 and a criminal history category of one for a sentencing guideline range of 10 to 168 months. The defendant timely objected to the firearm enhancement which remains unresolved for purposes of this hearing. The government did not file any objections to the PSR, but it did recently file a sentencing memorandum that includes an objection to the relevant conduct determination. The court now addresses these objections beginning with the defendant's.

### FIREARM ENHANCEMENT

The defendant objects to ¶ 36 of the PSR which applies U.S.S.G. § 2D1.1(b)(1) and gives him a two-level enhancement for possession of a dangerous weapon. Paragraph 36 states that several weapons were recovered from the defendant's garage when the search warrant was executed. Admitting guns were found as stated in the PSR, the defendant denies ownership, possession or knowledge of them. The defendant offers that the guns must have belonged to Trevor Allen who had been staying there and dealing drugs from Albright's residence. The defendant argues that he should not receive a firearm enhancement for Allen's possession of the guns, as he had no reason to expect that Allen would have guns there.

**Ruling:** Section 2D1.1(b)(1) provides that when a dangerous weapon, like a firearm, is possessed, this is a specific offense characteristic resulting in an additional two points. The commentary accompanying this provision explains:

The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense.

U.S.S.G. § 2D1.1, comment. (n. 3). Consistent with the commentary, the Tenth Circuit has said that the government has the initial burden of proving possession by a preponderance of the evidence, and proof of possession may be established by showing "mere proximity to offense." *United States v. Dickerson,* 195 F.3d 1183, 1188 (10th Cir.1999). To prove possession of a firearm in connection with a drug trafficking offense, the government must prove " 'that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant.' " *United States v. Flores,* 149 F.3d 1272, 1280 (10th Cir.1998) (quoting *United States v. Roederer,* 11 F.3d 973, 982 (10th Cir.1993)), *cert. denied,* 525 U.S. 1092, 119 S.Ct. 849, 142 L.Ed.2d 703 (1999). Such a nexus "may be established by showing that the weapon was located nearby the general location 'where drugs or drug paraphernalia are stored or where part of the transaction occurred.' " *Id.* (quoting *Roederer,* 11 F.3d at 983). If the government proves the possession of a gun in proximity to the drugs or transaction, then the enhancement is appropriate unless the defendant

can show that it is clearly improbable that the weapon was connected or related to the offense. *Dickerson*, 195 F.3d at 1188.

The defendant does not object to ¶ 28 which states that officers found two handguns with ammunition and two bullet-proof vests in the defendant's garage. Also in the garage, officers found a box that contained a digital scale and metal scoop with methamphetamine residue. In a room leading into the garage, officers located marijuana in a bucket. The well-settled rule in this circuit is that when a defendant objects to facts in the PSR the district court may no longer simply rely on the PSR, and it becomes the government's burden to prove those facts at a sentencing hearing by a preponderance of the evidence. *United States v. Shinault*, 147 F.3d 1266, 1277–78 (10th Cir.), *cert. denied*, 525 U.S. 988, 119 S.Ct. 459, 142 L.Ed.2d 411 (1998). On the other hand, if the defendant does not object to a fact in the PSR, then the fact is deemed to have been admitted for purposes of sentencing. *Id.* at 1278. In this case, the defendant's failure to object to the facts stated in ¶ 28 amounts to his admission of the same.

The government's initial burden is carried by the facts admitted in ¶ 28. The guns were found with ammunition and bullet-proof vests in the garage along with a digital scale and scoop that appears to have been used in drug transactions as evidenced by the methamphetamine residue. Marijuana was also discovered in a room that led to the garage. Most importantly, in his guilty plea the defendant effectively acknowledged that his entire house was used for drug trafficking purposes. Consequently, "the presence of firearms inside the house was sufficient to establish possession for purposes of § 2D1.1(b)(1)." *Dickerson*, 195 F.3d at 1188.

The defendant is mistaken in his argument that the government must prove he possessed the firearms. The Tenth Circuit has said that "personal possession of a firearm, . . ., is not necessary" to the application of this enhancement. *United States*

*v. Smith*, 131 F.3d at 1392, 1400 (10th Cir.1997). "The sentencing court may 'attribute to a defendant weapons possessed by his codefendants if the possession of weapons was known to the defendant or reasonably foreseeable by him.'" *Id.* (quoting *United States v. McFarlane*, 933 F.2d 898, 899 (10th Cir.1991)). In a recent case on all fours, the Tenth Circuit emphatically rejected a similar argument from a defendant who had been convicted of maintaining a residence for purposes of drug trafficking activities:

As applied here, the focus of § 2D1.1(b)(1) is whether Dickerson possessed a firearm in connection with the offense to which he pleaded guilty, that is, whether Dickerson violated 21 U.S.C. § 856(a)(2) by controlling a building and making it available for use for the purpose of illegal drug activity. By its very nature, the offense of conviction involved the participation of other persons. More specifically, in order to violate § 856(a)(2), Dickerson had to provide the house or building and other parties had to use the house to engage in drug trafficking activity. *See United States v. Banks*, 987 F.2d 463, 465–66 (7th Cir.1993). For purposes of sentencing, then, Dickerson can be held accountable for any reasonably foreseeable activities engaged in by the parties using his house for drug trafficking activities, including the possession of firearms. (citations omitted).

*Dickerson*, 195 F.3d at 1188–89. The court believes it was reasonably foreseeable to the defendant that Trevor Allen would possess a weapon to protect the drugs given that (1) Allen resided with the defendant, (2) Albright had permitted Allen to sell large quantities of methamphetamine from his house, and (3) more than one handgun was found along with ammunition and bullet-proof vests in a part of the house that would have been commonly, if not frequently, accessed by both Albright and Allen. Thus, the enhancement is appropriate unless the defendant can show that it was clearly improbable that

the weapons were connected with the drug trafficking activities that occurred in his house. Absent such a showing, the court denies the defendant's objection.

## RELEVANT CONDUCT DETERMINATION

In its sentencing memorandum filed August 2, 2000, the government objects that the PSR does not hold the defendant accountable for all of the methamphetamine that was trafficked through his house. The government argues for relevant conduct determinations that would result in base offense levels of either 36 or 34, as opposed to the 14 currently found in the PSR. The government bases these higher offense levels on the interview statements given by Trevor Allen and Joseph Sessel. The offense level in the PSR is based on the drugs found in the defendant's residence as well as the methamphetamine found on Timothy Haynes following his arrest outside the defendant's residence.

■ **Ruling:** Rule 32(b)(6)(B) of the Federal Rules of Criminal Procedure provides that "[w]ithin 14 days after receiving the presentence report, the parties shall communicate in writing to the probation officer, and to each other, any objections to any material information, sentencing classifications, sentencing guideline ranges, and policy statements contained in or omitted from the presentence report." This procedure and time limitation exists so that the probation officer may investigate and address the objections prior to the sentencing hearing. *See United States v. Jones,* 70 F.3d 1009, 1010 (8th Cir.1995). Another court discussed the impact of this limit in these terms:

> The 14–day limit is more than a mere technicality. It is designed to ensure that the sentencing process is fair, efficient and expeditious. If defendants or prosecutors are allowed to ignore this requirement and wait until the day of sentencing to raise objections, the sentencing court would be forced to choose between two equally unpalatable alternatives. It could proceed with the sentencing as scheduled, thereby depriving

the opposing party of an adequate opportunity to counter the objection, and rendering a decision made without benefit of all of the relevant facts and/or the applicable law. Alternatively, the court could postpone the sentencing in order to afford the opposing party an opportunity to respond, thereby delaying the proceeding, squandering judicial resources, and interfering with the efficient administration of justice.

*United States v. Hne,* 103 F.Supp.2d 483, 485 (D.R.I.2000). The Advisory Committee Notes to Rule 32 explains that this provision is part of an effort intended to promote "early resolution" of disputes over the PSR's contents, to maximize judicial economy through more orderly sentencing hearings, and to provide a fair opportunity to both sides for reviewing, objecting to and commenting on the PSR prior to the sentencing hearing. Consistent with the purposes behind these provisions, the Tenth Circuit has held that objections to the PSR must be timely made or they will be deemed to have been waived. *United States v. Canyon,* No. 95–2129, 94 F.3d 656, 1996 WL 477287, at *1 (10th Cir. Aug.22, 1996); *United States v. Ivy,* 83 F.3d 1266, 1297 (10th Cir.), *cert. denied,* 519 U.S. 901, 117 S.Ct. 253, 136 L.Ed.2d 180 (1996); *see also United States v. Young,* 140 F.3d 453, 457 (2nd Cir.1998).

■ Courts, however, do have discretionary authority to consider untimely objections. *United States v. Archuleta,* 128 F.3d 1446, 1452 n. 12 (10th Cir.1997). Rule 32(b)(6)(D) states that "[f]or good cause shown, the court may allow a new objection to be raised at any time before imposing sentence." The rule does not define "good cause" and the Advisory Committee's Notes do not offer much guidance. Logically, "good cause" must be defined in a way that does not frustrate the intended purpose behind these procedures for the timely identification, narrowing and resolution of PSR objections. The federal district in Rhode Island opined that "[g]ood cause may consist either of a

valid reason for the delay or a showing that the matter being challenged would result in the defendant receiving a sentence that 'is simply wrong, with no basis in fact.'" *United States v. Hne,* 103 F.Supp.2d 483, 485 (quoting *United States v. Young,* No. CR. 95–851, 1996 WL 737197, at *2 (S.D.N.Y. Dec.24, 1996)). In other statutory contexts, courts have fashioned definitions of "good cause" that refer to a substantial, good faith reason, *Gambino v. Morris,* 134 F.3d 156, 161 (3rd Cir. 1998) (Interpreting Parole Commission's authority to deny release on parole under 18 U.S.C. § 4206c (1997)); that reject simple mistake, inadvertence or neglect, *In re Kirkland,* 86 F.3d 172, 174–76 (10th Cir. 1996) (Applying Rule 4(j) of the Federal Rules of Civil Procedure); and that consider a party's diligence in attempting to meet the deadlines, *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 609 (9th Cir.1992) (Applying Rule 16(b) of the Federal Rules of Civil Procedure). In sum, the court believes good cause under Rule 32(b)(6)(D) requires either showing a diligent party has a good faith reason for the delay that constitutes more than a simple mistake or neglect or showing the untimely objection raises substantial factual or legal issues going to the basic fairness or validity of the PSR's sentencing findings and determinations.

■ The government's sentencing memorandum is silent as to any reasons for its delay in bringing this objection to relevant conduct. The court does not consider the PSR's omission of certain relevant conduct to be a matter that goes to the fundamental fairness or validity of a sentencing determination. In *United States v. Hardwell,* the Tenth Circuit upheld the district court's refusal to hear the government's untimely objection that the PSR omitted additional drugs from the relevant conduct determination. 80 F.3d 1471, 1500 (10th Cir.1996). Finally, the court's local rule on the filing of sentencing memoranda, Rule CR32.1, permits the filing of written statements "setting forth their respective positions in regard to the sentencing factors and facts which have not been resolved."

The government's memorandum here does not set forth its position on an issue that was raised and discussed, but not resolved prior to the sentencing hearing. In sum, the court finds that the government's objection is untimely, and the court declines in its discretion to hear the untimely objection as the government has not established good cause pursuant to Fed.R.Crim.P. 32(b)(6)(D).