**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 26 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

JAMES WALTON, aka Petie, aka Tim
Olds, aka Jamal Thomas, aka Jamarl
Thomas,

      Defendant-Appellant.

No. 97-3138
(District of Kansas)
(D.C. No. 95-CR-20086-01)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **McKAY,** and **MURPHY**, Circuit Judges.

Defendant James Walton appeals the district court's denial of his motion

either to compel the Government to file a motion for downward departure from

the Sentencing Guidelines based on substantial assistance or to allow him to

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

withdraw his guilty plea. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court affirms.

## I. BACKGROUND

In early 1996, Walton, along with thirteen others, was charged in a series of indictments. Walton was charged with six counts: conspiracy to distribute cocaine and cocaine base, engaging in a continuing criminal enterprise, possession with intent to distribute cocaine, conspiracy to launder money, and two counts of money laundering.

On July 12, 1996, in the course of plea negotiations, Walton was debriefed by the Government. On July 23, 1996, pursuant to a plea agreement, Walton entered a guilty plea to two of the six counts, conspiracy to distribute cocaine and cocaine base (count one) and conspiracy to launder money (count eleven). The plea agreement provided that in addition to pleading guilty to the two counts, Walton agreed to "fully cooperate with the government by being truthful, honest and candid as to all matters within the knowledge of this defendant as they relate to any wrong-doing involving the defendant and others." Under the agreement, such cooperation included complete debriefing, testifying in federal court as necessary, and assisting the Government in gathering evidence as deemed necessary. The plea agreement provided that in exchange for Walton's cooperation and guilty plea, the Government would, among other things, advise

the sentencing court of the nature and extent of Walton's cooperation and recommend a sentence at the low end of the applicable Sentencing Guideline range. The agreement further provided that "[i]f, in the sole opinion of the United States Attorney's office, the defendant's cooperation amounts to substantial cooperation, the government will file a motion, pursuant to Section 5K1.1 Sentencing Guidelines . . . , to depart downward from the defendant's applicable guideline range, which departure shall not be less than to Level 34."

Of Walton's codefendants, only Sylvester Anderson and Robert White went to trial. In his pre-plea debriefing, Walton informed the Government that he did not have any information relating to White. The Government anticipated, however, calling Walton as a government witness with respect to Anderson. In preparation for his expected testimony in Anderson's trial, Walton was further debriefed by the Government on July 25 and July 19, 1996.[1] During the course of Anderson's trial, the Government determined Walton's testimony was not necessary and therefore decided not to call Walton as a government witness at the trial. Walton did, however, testify at the trial on Anderson's behalf on August 2, 1996.

---

[1]Walton's debriefings with the Government were not recorded and there is therefore no transcript of the debriefings. The record does, however, contain copies of handwritten notes of the debriefings.

Before his sentencing, Walton learned the Government was not planning to file a motion for downward departure pursuant to § 5K1.1. On November 8, 1996, Walton filed a motion seeking to compel the Government to file a motion for downward departure, or, in the alternative, seeking permission to withdraw his guilty plea. Following a hearing in which Walton was allowed to testify and present other evidence, the district court denied this motion. Walton was sentenced in May 1997 to life imprisonment on count one and 240 months on count eleven, the sentences to run concurrently, plus supervised release.[2]

## II. DISCUSSION

### A. Motion to Enforce Plea Agreement

Walton first argues the district court clearly erred in finding the Government's decision not to file a motion for downward departure based on substantial assistance was made in good faith. Walton contends the Government's decision not to file the motion was made in bad faith and constituted a breach of the plea agreement. Walton asserts the district court should therefore have ordered specific performance of the plea agreement by requiring the Government to file a downward departure motion.

Section 5K1.1 of the Sentencing Guidelines permits a sentencing court to depart downward from the guideline range "[u]pon motion of the government

---

[2]Walton's unopposed motions to supplement the record are hereby granted.

stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense." Under § 5K1.1, the Government is not required to file a motion for downward departure when a defendant provides substantial assistance, but instead is granted discretion to do so. *See Wade v. United States*, 504 U.S. 181, 185 (1992). The Government may bargain away this discretion in a plea agreement. *See United States v. Lee*, 989 F.2d 377, 379 (10th Cir. 1993). Here, however, the plea agreement expressly left the decision to file such a motion in the sole discretion of the Government. "When a Defendant asserts that the government breached an agreement that leaves discretion to the prosecutor, the district court's role is limited to deciding whether the government made the determination [not to file the motion] in good faith." *Id.* at 380. Whether the Government acted in good faith is a factual determination which we review for clear error. *See id.*

In response to Walton's motion seeking to compel the Government to file a § 5K1.1 motion, the Government asserted Walton had not provided substantial assistance because he testified falsely at Anderson's trial and because, as a result of the false testimony, he compromised his ability to assist in subsequent investigations. The Government set out portions of Walton's testimony which it believed to be false or at least inconsistent with Walton's earlier statements. The Government further stated that, contrary to Walton's suggestions, Walton's

anticipated assistance was not limited to testifying for the Government at Anderson's trial. Instead, the Government asserted it had also originally planned to pursue information Walton had about certain cocaine distributors in Los Angeles. The Government stated that investigators in the case were unable to pursue Walton's knowledge of those distributors before Anderson's trial due to the lateness of Walton's plea, but the investigators had planned to further question him after the trial. Following the trial, however, the Government determined he had provided false testimony and therefore could not be considered a reliable source of information and could not be used as a credible witness. Accordingly, the Government decided not to interview Walton further.

In its order denying Walton's motion, the district court found the Government acted in good faith in deciding not to file a 5K1.1 motion because the Government had reasonably determined he did not provide substantial assistance. The court specifically found the Government made a bona fide tactical decision that Walton's testimony was not necessary at Anderson's trial. The court also found the Government reached the conclusion, based on Walton's trial testimony, that Walton's credibility problems so tarnished his ability to function as an effective witness at trial that it could not risk placing him before a jury. Further, the court stated "the government's position that Mr. Walton was totally compromised as an effective witness by what it reasonably believed to be false

testimony given at Mr. Anderson's trial . . . substantiates its determination not to pursue assistance from him [concerning other alleged drug dealers in Los Angeles] which otherwise might have justified a decision to file for a downward departure."

Walton argues that because the Government had doubts about his veracity from the beginning[3] and because Walton's testimony on Anderson's behalf about his own and Anderson's activities was not materially different from the debriefings, the Government's position that Walton was no longer a credible witness based on his testimony at the Anderson trial did not provide a good faith basis for its refusal to file a § 5K1.1 motion.

Based on a review of the record, the district court's finding that the Government decided in good faith not to file a § 5K1.1 motion is supported by the evidence and is not clearly erroneous. Although there is evidence indicating that in the initial debriefing government agents questioned whether Walton was telling them the complete truth, the record establishes, and Walton apparently does not dispute, that the Government did originally intend to call him as a witness at

---

[3]Walton asserts that from the time of his initial debriefing the Government had doubts about his credibility and truthfulness based on his apparent tendency to downplay his own involvement in criminal activity and based on inconsistencies between his statements and other evidence known to the Government. Walton further notes the Government was aware before entering into the plea agreement of a letter Walton had written to family members urging them to lie.

Anderson's trial. Following his plea, the Government debriefed Walton twice in preparation for that testimony. This supports the Government's assertion that, despite some doubts about his complete truthfulness, the Government nevertheless believed Walton could provide reliable and truthful information in testifying about his knowledge of Anderson's activities. This is not undermined by the Government's later decision not to call Walton to testify at Anderson's trial. Walton has not challenged the Government's explanation that because "the evidence was coming in well" at the trial, the Government determined Walton's testimony was unnecessary. Nor has Walton otherwise contended the Government's decision not to have him testify was based on some improper motive.[4]

There is also evidence, including testimony from Walton, that the Government originally intended to elicit further information from Walton concerning certain drug dealers in Los Angeles following Anderson's trial. According to the testimony of one of the government agents on the case, however,

---

[4]Although Walton asserts he was willing to testify for the Government at Anderson's trial, such willingness does not automatically qualify him for a reduction based on substantial assistance. *Cf. United States v. Courtois*, 131 F.3d 937, 939 (10th Cir. 1997) (holding that in absence of specific language in plea agreement to the contrary, government was not required to give defendant the opportunity to provide substantial assistance); *United States v. Vargas*, 925 F.2d 1260, 1266 (10th Cir. 1991) (noting plea agreement did not promise to reward mere cooperative intent).

based on Walton's testimony at the Anderson trial, the Government determined he had compromised his ability to assist them in further investigation.

The record also supports the district court's finding that the Government reasonably believed Walton testified falsely at Anderson's trial and therefore compromised his ability to provide reliable information and be a credible witness in the future. In addition to containing inconsistences with evidence provided by other witnesses, Walton's testimony at Anderson's trial was inconsistent in several respects with Walton's own previous statements made in his debriefings and with his admissions in his plea colloquy. For example, at Anderson's trial, Walton denied being involved in dealing cocaine through Juan Harkness. Walton testified he did not tell Harkness to give cocaine to Anderson and testified he had not done business or "any illegal things" with Harkness. This was inconsistent with Walton's admission to certain overt acts during his plea colloquy and was inconsistent with Harkness' testimony.[5] Walton also testified that although he

---

[5]Walton argues he mistakenly admitted guilt as to certain of the overt acts of the charged conspiracy at his plea colloquy. Although Walton has not identified which particular overt acts he denies, we assume he is referring to those overt acts relating to Harkness which were inconsistent with his trial testimony. Despite Walton's subsequent denial of culpability as to these overt acts, the Government could reasonably rely on Walton's admissions during the plea colloquy in determining whether his testimony at Anderson's trial was false. Moreover, as indicated above, the Government's contention that Walton did not present consistent, reliable testimony was not confined to the inconsistencies between his trial testimony and his admissions during the plea colloquy.

had known Anderson since 1988, they weren't "real close or nothing, just knew of him." He later stated, however, that it would not surprise him to learn records showed Anderson had paged him 277 times in less than two years. Walton also denied telling government agents Anderson got cocaine in from California and that he "would get it in as powder." This testimony was inconsistent with his debriefings, when he stated that "Chilly [Anderson] would get it in as powder." Walton did, however, testify he remembered telling government agents Tracy Johnson may have cooked cocaine for Anderson.[6]

---

[6]In the hearing on Walton's motion to withdraw his plea, Walton asserted that his testimony in the Anderson trial was consistent with his statements in the earlier debriefings. In his testimony at this hearing, however, Walton made a number of inconsistent statements regarding his testimony at the Anderson trial and his debriefings. For example, Walton testified he never told the Government that Anderson would get his cocaine in as powder and that Tracy Johnson might have cooked it. Walton admitted, however, that the notes from the initial debriefing stated that Anderson cooked his cocaine. Walton also testified that in the initial debriefing with the Government he denied any involvement with Harkness. He later admitted, however, that Harkness' name never came up in the first debriefing. This latter statement was consistent with the notes of the debriefing, which do not reference Harkness, and with the Government's contention that government agents did not specifically inquire about Harkness until the later debriefings.

Carl Cornwell, Anderson's attorney, also testified at this hearing. Cornwell testified that when he spoke with Walton before Walton testified on Anderson's behalf at the trial, Cornwell was aware of inconsistencies between Walton's statements and the notes of the debriefings. Cornwell testified he pointed this out to Walton and told Walton that if his testimony was inconsistent with the information he provided in the debriefings, it would be unlikely the Government would file a § 5K1.1 motion.

Based on the above, the district court did not clearly err in finding the Government acted in good faith in determining Walton did not provide substantial assistance and accordingly deciding not to file a § 5K1.1 motion.

## II. Motion to Withdraw Guilty Plea

Walton alternatively contends the district court erred in refusing to allow him to withdraw his guilty plea. Walton essentially argues he should have been allowed to withdraw his plea based on the Government's alleged breach of the plea agreement by failing to file a § 5K1.1 motion and based on his denial of culpability regarding specific overt acts of the conspiracy to which he pled guilty.

Rule 32 of the Federal Rules of Criminal Procedure provides that the court may permit a defendant to withdraw a guilty plea prior to sentencing "if the defendant shows any fair and just reason." Fed. R. Crim. P. 32(e). A defendant has no automatic entitlement to withdraw a guilty plea. *See United States v. Rhodes*, 913 F.2d 839, 845 (10th Cir. 1990). The burden lies with the defendant to establish a "fair and just reason" for withdrawal. *See id.* Relevant factors in determining whether a defendant's reason for withdrawal is "fair and just" include:

> (1) whether the defendant has asserted his innocence; (2) prejudice to the government; (3) delay in filing defendant's motion and, if so, the reason for the delay; (4) inconvenience to the court; (5) defendant's assistance of counsel; (6) whether the plea is knowing and voluntary; and (7) waste of judicial resources.

*United States v. Elias*, 937 F.2d 1514, 1520 (10th Cir. 1991). This court reviews the district court's denial of a motion to withdraw a guilty plea for abuse of discretion. *See id.*

Walton concedes withdrawal of his plea would create some prejudice to the Government, would inconvenience the court, and would cause the waste of judicial resources. He argues, however, that based on the remaining factors the district court should have allowed him to withdraw his plea. Walton contends that since his plea he has consistently maintained his innocence of particular overt acts of the charged conspiracy. He further asserts that his filing of his withdrawal motion approximately two months after learning the Government was not planning to file a § 5K1.1 motion did not constitute undue delay. Walton argues his counsel's admission in an affidavit that it was a mistake for Walton to admit guilt to all the overt acts in the conspiracy count indicates he did not have close assistance of counsel. Finally, he asserts his plea was not knowing and voluntary based on his allegedly mistaken admission of the overt acts.

In rejecting Walton's motion to withdraw his plea, the district court first found the Government's decision not to file a § 5K1.1 motion did not itself constitute sufficient reason for withdrawing the plea. This was not an abuse of discretion. The plea agreement did not guarantee the Government would file a § 5K1.1 motion, but expressly left the decision to file such a motion to the sole

-12-

discretion of the Government. During the plea colloquy, Walton stated he understood the terms of the agreement and understood the Government had sole discretion in deciding whether or not to file the motion. As discussed above, the evidence supports the district court's finding that the Government acted in good faith in electing not to file a § 5K1.1 motion. Accordingly, the district court could properly determine Walton's dissatisfaction with the Government's decision not to file a § 5K1.1 motion was insufficient reason to withdraw his plea.

The remaining factors identified by Walton also do not require reversal of the district court's decision. Although Walton asserts he mistakenly admitted certain overt acts of the charged drug conspiracy, he does not deny he was guilty of a drug trafficking conspiracy. Therefore, as the district court recognized, "there is no claim of either actual innocence or the availability of some other defense by which the defendant might be vindicated." In challenging the district court's finding that there was a long unexplained delay in filing the withdrawal motion, Walton's only explanation for waiting over two months after learning the Government would not file a § 5K1.1 motion before requesting to withdraw his plea was that he and his attorney were "weighing options and preparing the motion." The record also supports the district court's finding that despite Walton's assertion he did not have close assistance of counsel, Walton was "ably and aggressively represented by experienced and competent counsel."

There is no evidence supporting Walton's claim that his plea was not knowing and voluntary. During the plea colloquy, the district court questioned Walton carefully to determine Walton understood the terms of the plea agreement and the consequences of his guilty plea. Additionally, as the district court noted, the plea colloquy was specific, detailed, and "unequivocally called on Mr. Walton to admit his guilt and to admit he committed the overt acts" itemized by the Government.

Finally, as the district court noted and Walton has conceded, the factors of prejudice to the Government, inconvenience to the court, and waste of judicial resources all weigh against Walton. Based on the above, the district court did not abuse its discretion in denying Walton's motion to withdraw his plea.

### III. CONCLUSION

The district court did not clearly err in finding the Government acted in good faith in deciding not to file a motion for downward departure under U.S.S.G. § 5K1.1. The district court further did not abuse its discretion in

denying Walton's motion to withdraw his guilty plea. Accordingly, this court **AFFIRMS**.

ENTERED FOR THE COURT:

Michael R. Murphy
Circuit Judge