**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 3 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CHRISTOPHER D. KOVAC,

Defendant - Appellant.

No. 00-3335

(D. Kansas)

(D.C. No. 00-CR-20028-CM)

**ORDER AND JUDGMENT** *

Before **KELLY** and **ANDERSON** , Circuit Judges, and **STAGG** ,** District Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

**The Honorable Tom Stagg, United States District Judge for the Western District of Louisiana, sitting by designation.

Defendant Christopher Kovac entered a plea of guilty on charges of attempted manufacture of methamphetamine in violation of 21 U.S.C. § 841(a)(1). [1] The district court sentenced Kovac to 136 months in prison, applying a total offense level of 31 and a Criminal History Category of II under the United States Sentencing Guidelines ("USSG"). Kovac appeals his sentence, claiming that the district court erroneously (1) denied his motion to compel the Government to file a substantial assistance motion under USSG §5K1.1 and 18 U.S.C. § 3553(e), (2) imposed a two-level enhancement for the possession of a dangerous weapon under USSG §2D1.1(b)(1), and (3) refused Kovac's request for a horizontal downward criminal history departure under USSG §4A1.3. We exercise jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, and affirm.

**BACKGROUND**

On February 18, 1999, the DEA's Clandestine Lab Enforcement Team, led by Officer Ralph Sorrell, executed a search warrant at Kovac's home and found a

---

[1]Kovac also pled guilty to the possession of a firearm while being addicted to a controlled substance in violation of 18 U.S.C. § 922(g)(3), admitting that he was a user of, and addicted to, methamphetamine, and that he was found in possession of a Baretta 9mm handgun (which had been involved in interstate commerce) at the time of his arrest. Plea Agreement at ¶ 6, Ex. A to Def.'s Pet. to Enter Plea of Guilty and Order Entering Plea, R. Vol. I, Doc. 24. However, Kovac does not appeal any aspect of his conviction or sentence on the firearm possession offense.

methamphetamine lab. The lab was located primarily in the kitchen area of Kovac's residence, but there were also three or four anhydrous ammonia tanks found in a basement bunker and in the detached garage. Kovac admitted that the lab was his and that he was using anhydrous ammonia to manufacture methamphetamine. [2]

Prior to the search, Officer Sorrell asked Kovac if there were any weapons in the home and Kovac admitted that there was an explosive device or "bomb" in the attic. The attic of Kovac's residence was divided into two rooms, a bedroom and a storage area. The entrance to the storage area was through the bedroom, via a door located just to the left of the bed. The bomb was found just inside this door, about one step away from the bed. Kovac claimed that the bomb was manufactured by a friend who intended to throw it into someone's car; but he later changed his story, stating that the friend intended to throw the bomb into a house.

There was a bottle of rifle reloading powder next to the bomb. When questioned by Officer Sorrell, Kovac admitted that the reloading powder was his, claiming "that he was going to do some reloading but never got around to it." Tr.

---

[2]On the same day, DEA officers stopped another individual who was seen leaving Kovac's residence and who was found to be in possession of methamphetamine. The man indicated that he had purchased the methamphetamine at the Kovac residence, and that he purchased drugs at that residence on at least nine different occasions.

of Sentencing Hr'g at 27, R. Vol. II, Doc. 52. Officer Sorrell testified that after he pointed out that the reloading powder was the same kind used in the bomb, Kovac "kind of hung his head for a second and said that [his friend] had saw [sic] him with that [sic] and had borrowed it from him to make this explosive device." Id. at 28. During the search the officers also found a "trip-light" system that was apparently designed to let occupants know when someone was approaching the front of the house. On the outside of the house there was a motion sensor or an electric eye that was triggered if anyone approached. This motion sensor was connected to a spotlight in the attic bedroom that would turn on and shine directly on the bed.

Kovac was arrested and charged in a seven-count Indictment alleging various drug and firearm offenses. On May 15, 2000, Kovac pled guilty on two counts, including the attempted manufacture of more than 50 grams of methamphetamine (Count 2). The parties entered into a plea agreement stating, in relevant part, as follows:

> The government agrees to advise the sentencing court prior to sentencing of the nature and extent of the cooperation in this or other investigations provided by this defendant. If, in the sole opinion of the United States Attorney's office, the defendant's cooperation amounts to substantial assistance, the government will file a motion, pursuant to Section 5K1.1 Sentencing Guidelines [sic] and Title 18, United States Code, Section 3553(e), to depart downward from the defendant's applicable guideline range.

Plea Agreement at ¶ 2(e), Ex. A to Def.'s Pet. to Enter Plea of Guilty and Order Entering Plea, R. Vol. I, Doc. 24 (emphasis added).

Thereafter, Officer Sorrell interviewed Kovac, in the presence of his attorney, at the Corrections Corporation of America facility at Leavenworth Kansas, in an effort to determine whether he could provide substantial assistance. Lawyers in the United States Attorneys Office then conferred with Officer Sorrell about the interview and reviewed the statement provided by Kovac. After doing so, the United States Attorneys Office determined that the information provided by Kovac was neither new nor useful to the Government. That office also took into account Officer Sorrell's statements that he did not believe that Kovac was entirely truthful during the interview, specifically referring to Kovac's refusal to accept responsibility for the bomb. Based on the information obtained from Officer Sorrell's interview with Kovac, the United States Attorneys Office determined that a substantial assistance motion was not warranted.

Kovac's sentencing hearing started on October 2, 2000, but was continued until October 11, 2000. During the October 2 portion of the hearing, Kovac's attorney attempted to question Officer Sorrell about his meeting with Kovac and whether Kovac provided substantial assistance. The Government objected, asserting that such questioning was irrelevant because the Government had not

filed a §5K1.1 motion, having determined that such a motion was unwarranted. The district court agreed and sustained the Government's objection. When the sentencing hearing resumed on October 11, however, Kovac submitted a motion to compel the Government to file a substantial assistance motion, claiming that the Government's refusal constituted bad faith, in violation of the plea agreement. Def.'s Suggestions in Supp. of Req. to Compel Gov't to File §5K1.1 Mot. at 3, R. Vol. I, Doc. 41. The district court denied Kovac's motion, finding that "the Government has complied with that part of the agreement and there's no showing of bad faith based on the evidence that was presented to the court." Tr. of Sentencing Hr'g at 110.

In sentencing Kovac, the district court applied a two-level enhancement under §2D1.1(b)(1), finding that Kovac possessed a dangerous weapon (i.e., the bomb) in connection with his illegal drug manufacturing activities. Kovac objected to this enhancement, asserting that it was clearly improbable that the bomb was connected with the offense. Def.'s Sentencing Mem. at 1, R. Vol. I, Doc. 30 (citing USSG §2D1.1, Comment (n.3)). In response to Kovac's objection, the Government called Officer Sorrell to testify at the sentencing hearing. Officer Sorrell testified that he considered the bomb to be a dangerous weapon, and that based on his experience in investigating over 300 methamphetamine lab cases the bomb was possessed in connection with Kovac's

illegal drug manufacturing operation.  Specifically, Officer Sorrell concluded that together with the warning devices found on the premises,  the bomb was apparently intended as a means of destroying evidence in the event a police raid on the lab appeared imminent.  Tr. of Sentencing Hr'g at 30-33.  The district court overruled Kovac's objection and applied the two-level enhancement.      Id. at 104-05.

Finally, Kovac objected to the Presentence Investigation Report's ("PSR") "criminal history" calculation, which assessed three criminal history points and placed him within Category II of the Sentencing Table, rather than Category I.  The PSR assessed two criminal history points for Kovac's February 8, 1990, conviction for Driving Under the Influence of Alcohol, Transporting an Open Container and Providing False Information to a Law Enforcement Officer, and one criminal history point based on Kovac's June 15, 1992, conviction for Disorderly Conduct.  PSR at 8-12.  Kovac argued that the PSR over-represented his criminal history by considering the 1990 conviction, which was almost ten years old at the time he committed the offenses in this case, and sought a horizontal downward departure under USSG §4A1.3.  Tr. of Sentencing Hr'g at 10-11.  Although the district court did not specifically discuss Kovac's objection to the PSR's criminal history recommendation during its ruling at the sentencing hearing, it heard argument on this objection and expressly accepted the PSR's

calculations, sentencing Kovac in accordance with Category II of the Sentencing Table. Tr. of Sentencing Hr'g at 119; Judgment in a Criminal Case at 8, R. Vol. I, Doc. 43.

**DISCUSSION**

In general, "[w]e review the district court's legal interpretation and application of the guidelines de novo and review the court's factual findings for clear error, giving due deference to the court's application of the guidelines to the facts." United States v. Henry, 164 F.3d 1304, 1310 (10th Cir. 1999). Under this standard, "we will not reverse the district court unless the court's finding was without factual support in the record, or if after reviewing all the evidence we are left with the definite and firm conviction that a mistake has been made." United States v. Beaulieu, 893 F.2d 1177, 1182 (10th Cir. 1990).

*A.    Substantial Assistance Motion*

Kovac's first contention on appeal is that the district court improperly denied his motion to compel the Government to file a substantial assistance motion under USSG §5K1.1 and 18 U.S.C. § 3553(e). As indicated above, Kovac contends that the Government violated its obligation under the plea

agreement because its "refusal to file a 5K motion [was] in bad faith or . . . irrational." Appellant's Opening Br. at 11.

Section 5K1.1 of the Sentencing Guidelines permits a sentencing court to depart downward from the applicable guideline range "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense." 18 U.S.C. § 3553(e) similarly allows a district court, upon a motion by the government, "to impose a sentence below a level established by statute as minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense."

Under both §5K1.1 and § 3553(e), "[t]he government's motion is 'an unequivocal condition precedent . . . to a downward departure by the district court, limiting the court's authority and giving the government 'a power, not a duty, to file a [§5K1.1] motion when a defendant has substantially assisted.'" United States v. Cerrato-Reyes, 176 F.3d 1253, 1264 (10th Cir. 1999) (quoting United States v. Lee, 989 F.2d 377, 379 (10th Cir. 1993) and Wade v. United States, 504 U.S. 181, 185 (1992)). [3] A prosecutor is granted the sole discretion to decide whether or not to file a substantial assistance motion on the defendant's

_____

[3]Although Cerrato-Reyes involved claims under §5K1.1, and not § 3553(e), the analysis is the same under both provisions. United States v. Duncan, 242 F.3d 940, 944 n. 5 (10th Cir. 2001).

behalf.  United States v. Courtois  , 131 F.3d 937, 938 (10th Cir. 1997).   See also

United States v. Massey  , 997 F.2d 823, 824 (10th Cir. 1993) ("Congress wisely

or unwisely left the matter of substantial assistance to the prosecutor").  With

few exceptions, the prosecutor's exercise of such discretion is not subject to

review by the district courts.   Courtois , 131 F.3d at 938.

One exception allows a district court to review the government's

discretionary refusal to file a substantial assistance motion if the defendant

makes a "substantial threshold showing" that such refusal was unconstitutional,

either because it was based on an unconstitutional motive, such as the

defendant's race or religion, or because it was not rationally related to any

legitimate governmental objective.   Wade, 504 U.S. at 185-86.   See also United

States v. Duncan  , 242 F.3d 940, 947 (10th Cir. 2001).  In the proceedings below,

Kovac did not assert any constitutional challenges to the Government's

discretionary refusal to file a substantial assistance motion on his behalf, and

thus we do not consider the applicability of this exception on this appeal.     [4]

---

[4]For the first time on appeal Kovac attempts to raise a constitutional
challenge, asserting that the Government's refusal to file a substantial assistance
motion was not rationally related to any legitimate governmental end, and relying
on Duncan, which was decided during the pendency of this appeal.  Ordinarily,
we will not consider an issue on appeal that was not raised below.  Walker v.
Mather, 959 F.2d 894, 896 (10th Cir. 1992).  Although we have the discretion to
consider new arguments based on "changes in the law arising during the pendency
of the appeal," Anixter v. Home-Stake Prod. Co., 77 F.3d 1215, 1222 (10th Cir.
(continued...)

Another exception allows the district court to step in "if 'the refusal violates an agreement with the government.'" Cerrato-Reyes , 176 F.3d at 1264 (quoting Lee, 989 F.2d at 379)).  It is this exception which Kovac invokes.

The question of whether or not the government has breached a plea agreement is a question of law which we review *de novo* .  Courtois , 131 F.3d at 938.  Without question, the plea agreement here does not expressly obligate the Government to file a substantial assistance motion. [5]  Indeed, Kovac does not

---

[4](...continued)
1996), we decline to exercise such discretion in this case because (i) the standard relied upon by Kovac, and recognized by Duncan, was articulated through Wade as early as 1992, (ii) there is no evidence in the record to support Kovac's claims that the government's decision was irrational, and (iii) Kovac made no showing, much less a "substantial threshold showing," that the Government's discretionary refusal was unconstitutional.  Indeed, Kovac's only claim on appeal is that the Government's discretionary refusal in this case did not further the legitimate governmental interests specifically articulated in Duncan, but in that case we neither purported to provide an exhaustive list of legitimate governmental ends, nor suggested in any way that the ends specifically articulated therein were the only ones the government could ever rely upon.

[5]We apply general principles of contract law when defining the government's obligations under a plea agreement, looking to the express language and construing any ambiguities against the government as drafter.  United States v. Brye, 146 F.3d 1207, 1210 (10th Cir. 1998). As with all contracts, we interpret plea agreements by giving effect to their plain and unambiguous language, giving due consideration to a defendant's reasonable understandings at the time.  United States v. Bunner, 134 F.3d 1000, 1003 (10th Cir. 1998).  As quoted above, the plain language of Section 2(e) of the plea agreement in this case merely left open only the possibility of a substantial assistance motion.  It did not obligate the Government to file a motion, "expressly leaving the decision to file such a motion in the sole [opinion] of the government."  Courtois, 131 F.3d at 939.  While the plea agreement could have limited the discretion otherwise granted to the

(continued...)

-11-

assert that the Government was expressly obligated to file a substantial assistance motion on his behalf under the plea agreement. Both below and on appeal, Kovac asserts only that by entering into the plea agreement, a contract, the Government implicitly agreed to act in good faith, limiting its discretion and subjecting its decision-making process to review for "bad faith."

We recognize that as a general rule of contract law there is an implied obligation of good faith and fair dealing in all contracts. See Concrete Spec. v. H.C. Smith Constr. Co. , 423 F.2d 670, 672 (10th Cir. 1970) (citing 5 S. Williston, Contracts § 670, at 159 (3rd ed. 1961)). We also recognize the general rule that plea agreements are to be enforced and construed in accordance with traditional contract principles. United States v. Thompson , 237 F.3d 1258, 1260-61 (10th Cir. 2001). Nonetheless, there is a split of authority among the federal circuits regarding whether or not the government's discretionary refusal to file a substantial assistance motion can be reviewed for bad faith under plea agreements which expressly grant the government sole discretion over a defendant's entitlement to such a motion. The majority of the federal circuits addressing the issue reject a district court's review of the prosecutor's discretionary refusal of a substantial assistance motion for bad faith in such

_____

[5](...continued)
government under §5K1.1 and § 3553(e), Lee, 989 F.2d at 380, it clearly did not do so.

-12-

cases, [6] while a minority hold that the implied obligation of good faith and fair dealing applies to such plea agreements, allowing the district court to review a prosecutor's discretionary refusal for bad faith. [7]

---

[6]See United States v. Anderholt, 87 F.3d 740, 742 (5th Cir. 1996) ("If the Government retains sole discretion to file the motion [under a plea agreement], its refusal to file is reviewable only for unconstitutional motives."); United States v. Forney, 9 F.3d 1492, 1502 (11th Cir. 1993) (holding that where government retains discretion to file substantial assistance motion in plea agreement "courts are precluded from intruding into prosecutorial discretion" unless there is "an allegation *and* a substantial showing that the prosecution refused to file a substantial assistance motion because of a constitutionally impermissible motivation"); United States v. Romsey, 975 F.2d 556, 558 (8th Cir. 1992) (holding that where defendant's "carefully-worded plea agreement preserved the government's discretion not to file a substantial assistance motion" defendant must make a "substantial threshold showing that the prosecutor's refusal . . . was based on a constitutionally impermissible motive"); United States v. Burrell, 963 F.2d 976, 984 (7th Cir. 1992) (stating that where government retains discretion to file substantial assistance motion under plea agreement government is not required to file a motion and its discretionary refusal can be reviewed only for constitutional violation, not "arbitrariness"); United States v. Sims, No. 92-5116, 1992 WL 190909, at *3 (4th Cir. Aug. 11, 1992) (holding that where plea agreement leaves discretion with the government, "the government made no promise to move for the departure based on substantial assistance, and, absent such a promise, the government has discretion, within constitutional limits, whether to do so").

[7]United States v. Issac, 141 F.3d 477, 483 (3rd Cir. 1998) (applying basic contract principles and holding that "a district court is empowered to examine for 'good faith' a prosecutor's refusal to file a §5K1.1 motion pursuant to a plea agreement that gives the prosecutor 'sole discretion' to determine whether the defendant's assistance was substantial"); United States v. Jones, 58 F.3d 688, 690-91 (D.C. Cir. 1995) (holding that although plea agreement gives government sole discretion in determining whether or not to file a substantial assistance motion, the plea agreement "provides additional protection" and, "[l]ike all contracts, it includes an implied obligation of good faith and fair dealing"); United State v. Rexach, 896 F.2d 710, 714 (2nd Cir. 1990) (stating that implied

(continued...)

Similarly, the decisions within this circuit are not consistent. Some cases hold that "the district court's role is limited to deciding whether the government has made its determination [not to file the motion] in good faith." United States v. Vargas, 925 F.2d 1260, 1266 (10th Cir. 1991). [8] Other cases hold that where the government retains its sole discretion under the express terms of the plea agreement it retains the powers otherwise granted it under §5K1.1 and § 3553(e), and thus its discretionary refusal to file a motion is reviewable only for constitutional error, as articulated in Wade. See United States v. Hawley, 93 F.3d 682, 691 (10th Cir. 1996) (holding that where plea agreement leaves decision within the "sole and exclusive discretion" of the government defendant must demonstrate that government acted with unconstitutional motive and court lacks jurisdiction to review government's decision where unconstitutional

_____

[7](...continued)
covenant of good faith and fair dealing principles apply to plea agreements retaining government's sole discretion over substantial assistance motions), aff'd in dicta, United States v. Ming-He, 94 F.3d 782, 787 (2nd Cir. 1996).

[8]See also Cerrato-Reyes, 176 F.3d at 1264; Lee, 989 F.2d at 380; United States v. Crocklin, No. 98-3186, 1999 WL 41074, at *1 (10th Cir. Feb. 1, 1999); United States v. Thompson, No. 97-3172, 1998 WL 544313, at *2 (10th Cir. Aug. 26, 1998); United States v. Walton, No. 97-3138, 1998 WL 544310, at *2 (10th Cir. 1998).

-14-

motives have not been alleged, or the defendant has made only "generalized allegations of improper motive").[9]

Because we believe that the latter view more accurately reflects the policies announced in Wade limiting our intrusion into prosecutorial discretion over substantial assistance motions,[10] as well as the policies and principles announced in other Supreme Court decisions generally limiting our intrusion into a district court's application of the Sentencing Guidelines, we adopt that view and hold that where a plea agreement expressly grants the government sole discretion over the filing of a substantial assistance motion, a prosecutor's discretionary refusal to file such a motion may not be reviewed for bad faith. Such plea agreements merely reaffirm the power otherwise granted the prosecutor under §5K1.1 and § 3553(e); they do not give defendants any greater rights, nor do they give the courts a greater power of review. Based on the fact that Kovac challenged the Government's discretionary refusal to file the

_____

[9]See also United States v. Berger, 251 F.3d 894, 910 (10th Cir. 2001); United States v. Webb, No. 99-5189, 2000 WL 1596108, at *2 (10th Cir. Oct. 26, 2000).

[10]Those cases within this circuit reaching the opposite conclusion and allowing district courts to review the government's discretionary refusal to file substantial assistance motions under a plea agreement for "bad faith" do so in reliance upon the holding first articulated in Vargas. See, e.g., Lee, 989 F.2d at 380 (citing United States v. Robinson, 978 F.2d 1554, 1569 (10th Cir. 1992) (citing Vargas, 925 F.2d at 1266)). However, Vargas was decided prior to Wade, and these later cases simply do not recognize the ways in which Wade has altered the landscape in this area of the law.

-15-

substantial assistance motion below solely on the grounds of alleged bad faith, his claim is not subject to any further review on appeal.

Even assuming *arguendo*, however, that the Government's discretionary refusal could be reviewed for bad faith under traditional contract principles, we would still affirm the denial of Kovac's motion, and we would do so regardless of which standard applies to such claims. [11] Kovac essentially claims that because he met with Officer Sorrell in Leavenworth, Kansas, and provided a statement, he necessarily provided substantial assistance. He asserts that the government acted in bad faith, and abused its discretion, by refusing to file a substantial assistance motion on his behalf merely because they believed that the information he provided was not useful and they doubted his veracity. [12] The

---

[11]We have never fully articulated the standard for "bad faith" in this context. Some circuits hold (i) that a defendant is required to make a prima facie showing of bad faith, (ii) that the government must then come forth with a good faith explanation for its decision, and (iii) that the defendant then bears the ultimate burden of proving that the government's reasons were inadequate or merely pretextual. See, e.g., Issac, 141 F.3d at 484 (citing United States v. Imtiaz, 81 F.3d 262, 264 (2nd Cir. 1996)) (adopting a standard of proof and persuasion for cases involving claims that the government refused substantial assistance motions in bad faith). We need not accept or reject any one standard at this time, however, because regardless of what possible standard may be applied, Kovac presented absolutely no compelling evidence of bad faith, either below or on appeal.

[12]On appeal, Kovac asserts that the government cannot refuse a substantial assistance motion merely because the government found the information provided to be useless to its investigation, relying primarily on an analogy to 18 U.S.C. § 3553(f)(5), a provision which expressly renders the usefulness of the

(continued...)

district court found, however, that there was "no showing of bad faith" in this case, Tr. of Sentencing Hr'g at 110, and this finding is not clearly erroneous. See Lee, 989 F.2d at 380 (stating that question of whether government acted in good faith is factual one reviewed for clear error).

Keeping in mind that a district court must give "[s]ubstantial weight . . . to the government's evaluation of the extent of the defendant's assistance," USSG §5K1.1, App. Note 3, a defendant challenging the government's discretionary refusal to file a substantial assistance motion on the basis of "bad faith" has a heavy burden, and must demonstrate by a preponderance of evidence that the

---

[12](...continued)
information provided by a defendant irrelevant when a district court is assessing whether or not to depart from the Sentencing Guidelines in favor of a lower statutory minimum sentence. Kovac's analogy is flawed, however, because §5K1.1 and § 3553(e) simply do not contain the language Kovac relies upon from § 3553(f), and § 3553(f) and its counterpart USSG §5C1.2 are fundamentally distinct provisions that have absolutely no application in this case. See United States v. Acosta-Olivas, 71 F.3d 375, 379 (10th Cir. 1995) ("Section 5K1.1 [and § 3553(e)] concerning substantial assistance operate[] very differently from §5C1.2 [and § 3553(f)(5)]."). See also United States v. Maduka, 104 F.3d 891, 895 (6th Cir. 1997) (observing that "sections 5C1.2 and 5K1.1 perform distinct functions").

Kovac further asserts that the government cannot refuse a substantial assistance motion based on the perceived untruthfulness of the defendant, asserting that "there is no requirement in the 5K clause concerning truthfulness." Appellant's Opening Br. at 12. This argument defies common sense and the essential purpose of §5K1.1 because a defendant can in no circumstances be said to provide "assistance" to the government, much less "substantial assistance," if he is not providing truthful information. There is nothing unreasonable in the government considering the perceived veracity of the defendant when deciding whether or not to file a substantial assistance motion on his or her behalf.

-17-

government acted in a patently unreasonable manner, entirely disregarding the assistance provided with the intent of purposely denying him or her the benefit of the substantial assistance motion. [13] Kovac did not meet this burden. His claims, both below and on appeal, amount to nothing more than blanket assertions and conclusory allegations that the Government acted inappropriately without any evidence whatsoever of illicit motive or an abuse of discretion by the United States Attorneys Office. We are not persuaded by Kovac's baseless allegations of bad faith and thus, even if the Government's discretionary refusal could be reviewed for bad faith, we would still affirm.

B.    *Dangerous Weapon Enhancement*

Kovac's second contention on appeal is that "he should not have been assessed a two-level enhancement under §2D1.1(b)(1) of the Guidelines for

---

[13]See generally Issac, 141 F.3d at 484 (concluding that defendant must show that government did not base its decision on "an honest evaluation of the assistance provided," but inappropriately considered factors "extraneous to the decision"); United States v. Doe, 170 F.3d 223, 225-26 (1st Cir. 1999) (explaining that a claim of bad faith requires more than a showing of mere unreasonableness or arbitrariness); Black's Law Dictionary 127 (5th ed. 1979) (stating that "bad faith" is "not simply bad judgment or negligence," but "implies the conscious doing of a wrong because of dishonest purpose or moral obliquity"). See also Lampkin v. Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am. (UAW), 154 F.3d 1136, 1144 (10th Cir. 1998) (stating that in claim that union breached duty of fair representation, bad faith requires a showing that the challenged activity was "so far removed from reasonable as to be wholly irrational or arbitrary").

possession of a dangerous weapon in connection with a drug offense because it was clearly improbable that the weapon in question [i.e., the bomb] was connected with the offense." Appellant's Opening Br. at 6. The district court found that the Government sufficiently proved that Kovac possessed the bomb during the commission of the manufacturing crime to which he pled guilty, and overruled Kovac's objection. Tr. of Sentencing Hr'g at 105. This finding is not clearly erroneous.

USSG §2D1.1(b)(1) provides for a two-level enhancement if a "dangerous weapon (including a firearm) was possessed" during the commission of the offense. "The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." USSG §2D1.1, Comment (n. 3). "The government has the burden to prove by a preponderance of the evidence that a weapon was possessed in physical proximity to the offense." United States v. Contreras, 59 F.3d 1038, 1040 (10th Cir. 1995). To meet this burden, the government is required to "present evidence demonstrating 'that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant.'" United States v. Lang, 81 F.3d 955, 964 (10th Cir. 1996) (quoting United States v. Robertson, 45 F.3d 1423, 1449 (10th Cir. 1995)) (further quotations omitted). Once the government meets

its burden, the onus is on the defendant to demonstrate that the two-level enhancement should not apply. Contreras , 59 F.3d at 1040.

"The government meets its initial burden when it shows that a weapon was located near the general location where at least part of a drug [offense] occurred." United States v. Vaziri , 164 F.3d 556, 568 (10th Cir. 1999). It is undisputed that Kovac owned, constructed and operated the lab at his residence, and the Government presented evidence that Kovac knew there was a bomb in the attic, as well as evidence connecting the bomb to the drug activity occurring on his premises. [14]

Kovac's rejoinder is that despite this evidence, it was "clearly improbable" that the bomb was actually connected to the manufacturing offense. Kovac argues that because manufacturing related activity occurred only in the kitchen, the basement and the detached garage, areas of the residence "far removed" from the attic where the bomb was actually found, there was an insufficient "spatial" connection between the weapon and the manufacturing charge. Appellant's Opening Br. at 8; Appellant's Reply Br. at 2. It is undisputed, however, that the attempted manufacture occurred in Kovac's residence, and the presence of the bomb in that same residence is enough to support the enhancement if the

---

[14]Specifically, Officer Sorrell testified that in his professional opinion the bomb, together with the warning devices found on Kovac's premises, were apparently intended as a means of destroying evidence in the event that a police raid on Kovac's lab appeared imminent.

residence was generally used in the furtherance of the alleged drug offense. <u>See</u> <u>United States v. Dickerson</u>, 195 F.3d 1183, 1188 (10th Cir. 1999) (concluding that enhancement proper because although firearms were not found in same room as drugs, they were found in "close proximity" to the drugs and the entire house was utilized for drug activity); [15] <u>Contreras</u>, 59 F.3d at 1039 (holding that although firearm was found in attached garage, twenty five feet from drugs in living room, enhancement proper because entire residence was used as a "stash house" for drugs); <u>United States v. Earls</u>, 42 F.3d 1321, 1326 (10th Cir. 1994) (upholding enhancement where residence generally "used in furtherance of the drug business"). The record indicates that Kovac's drug activity did not occur in a small, isolated part of his residence, but extended throughout the house and even into adjacent buildings. <u>See</u> Tr. of Sentencing Hr'g at 15-20; Reply Brief at 2 ("There was activity in the kitchen . . . , in the basement . . . and in the detached garage). As we recognized in <u>United States v. Flores</u>, 149 F.3d 1272 (10th Cir. 1998):

---

[15]Kovac argues that <u>Dickerson</u> is distinguishable because the defendant in that case was convicted of "controlling a building and making it available for use for the purpose of illegal drug activity," a crime that, by its very nature, "implicated the illegal use of the entire residence." Appellant's Reply Br. at 1-2. However, it was not the crime charged that was important in <u>Dickerson</u>, but the fact that the crime implicated the entire residence. 195 F.3d at 188. In Kovac's case, although a manufacturing charge does not implicate the illegal use of an entire residence by its very nature, there is sufficient evidence in the record demonstrating that the entire Kovac residence was in fact used in furtherance of his illegal manufacturing activity.

enhancement under §2D1.1(b)(1) is designed to reflect the increased danger of violence when drug traffickers add firearms to the mix. . . . Although in many cases the weapon will be involved with some sort of illegal transaction, it is not necessary for the Government to show that drugs and money changed hands near the weapon; the weapon may simply serve as a potentially deadly means of protecting the trafficker's goods, thereby increasing the danger of violence.

Id. at 1280 (citation omitted). Although there is no evidence that any manufacturing actually occurred in the attic or the adjacent bedroom, there is sufficient evidence to support the conclusion that the residence was generally used to further Kovac's illegal manufacturing activities, and that the bomb served as a "potentially deadly means of protecting" Kovac's operations from detection by destroying evidence in the event a police raid on the lab appeared imminent, "thereby increasing the danger of violence." Id.

Kovac further asserts that the district court's ruling was erroneous because there was no evidence that he actually owned or controlled the bomb. For purposes of §2D1.1(b)(1), however, "[p]ersonal possession of a [weapon] . . . is not necessary." United States v. Smith, 131 F.3d 1392, 1400 (10th Cir. 1997). Regardless of whether or not Kovac was the technical owner of the bomb, the evidence demonstrated that Kovac was aware that the bomb was in the attic, and that Kovac had full access to the bomb during his illegal drug manufacturing. See United States v. Hallum, 103 F.3d 87, 89 (10th Cir. 1996) (finding enhancement proper where weapon was accessible to criminals while they were

-22-

involved in drug cultivation activity). Although Kovac told Officer Sorrell that the bomb was not his and was not intended to be used in connection with his illegal manufacturing operation, Officer Sorrell testified that he did not believe Kovac, and the district court apparently found Officer Sorrell's testimony to be more credible than the statements made by Kovac at the time of his arrest (or thereafter). We will not disturb such determinations on appeal. United States v. Caro, 248 F.3d 1240, 1243 (10th Cir. 2001). [16]

In light of the evidence presented at the sentencing hearing, the district court did not clearly err in finding that the Government met its burden under §2D1.1(b)(1), and in concluding that there was a sufficient connection between the bomb, the manufacturing activity, and Kovac to overrule Kovac's objection to the two-level enhancement.

---

[16]Kovac also asserts that because the bomb "was not easily transported or carried" like a firearm, it was not "amenable to use in drug trafficking." Appellant's Opening Br. at 9. We note that while §2D1.1(b)(1) specifically references "firearms," it applies equally to any dangerous weapon used in the commission of an applicable offense, regardless of whether or not the weapon is a "mobile" weapon, such as a firearm. Moreover, although we make no judgment about whether or not the mobility of a weapon may be relevant in cases involving the actual transportation of drugs, we believe that because Kovac was convicted of attempted manufacturing, a drug crime that did not necessarily involve the actual transport or movement of drugs, the mobility or immobility of the bomb is entirely irrelevant in this case.

## C.    *Criminal History Departure*

Kovac's final contention on appeal is that the district court erred in refusing to depart downward when fixing his criminal history category under the Sentencing Guidelines.  Kovac claims that the PSR over-represented his criminal history and asserts that a downward departure was warranted under USSG §4A1.3. [17]  However, "[i]t is established law in this circuit, and in every circuit which has considered the jurisdictional issue, that an appellate court does not have jurisdiction to review a district court's discretionary refusal to depart downward from the sentencing guidelines."     United States v. McHenry  , 968 F.2d 1047, 1048 (10th Cir. 1992).

Kovac expressly acknowledges the limits on our jurisdiction and attempts to overcome them by asserting that "the District Court did not understand its authority to [depart]" because it did not mention the departure motion in its ruling at sentencing, or in the judgment itself.  Appellant's Reply Br. at 6-7.  Although we will review discretionary refusals to depart where it appears from the record that "the district court refused . . . because it erroneously interpreted the Guidelines as depriving it of the power to depart based on the proffered circumstances,"   United States v. Barrera-Barron    , 996 F.2d 244, 245 (10th Cir.

---

[17]Section 4A1.3 allows a departure "[i]f reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes. . . ."

1993), such review is appropriate only where "the judge's language unambiguously states that the judge does not believe he has authority to downward depart." United States v. Rodriguez, 30 F.3d 1318, 1319 (10th Cir. 1994). Such unambiguous language does not exist here, and there is nothing in the record to suggest that the district court misunderstood its authority to depart downward under USSG §4A1.3. The district court heard argument on Kovac's motion and implicitly rejected it, finding "that the total offense level as modified by the court's ruling should be a total offense level 31, criminal history category 2." Tr. of Sentencing Hr'g at 113. The fact that the district court did not articulate the exact reasons for its discretionary refusal does not evidence that the district court misunderstood its ability to depart downward. Thus, we lack jurisdiction to consider this allegation of error.

## CONCLUSION

For the foregoing reasons, we AFFIRM Kovac's sentence.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge

-25-